FRANCESCO MORELLO

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 21, 1907—Rehearing denied April 18, 1907.*

1. EVIDENCE—*when a refusal to strike out answer is not error.* Where a witness who has testified that she saw the accused shoot three times at the deceased is asked what happened to the deceased when the shots were fired, to which she replies that the shots killed him, a motion to strike out such answer upon the ground that it was not responsive is addressed to the discretion of the court, which is not abused by denying the motion if other evidence tends to show that one of the shots did cause the death.

2. SAME—*what is not admissible as part of the res gestæ.* What the brother of the deceased said when he was disarmed by the witness cannot be proved as part of the *res gestæ* attending the killing of the deceased, where the witness has not testified that the deceased and his brother were acting in concert in the affray, and it appears that the brother was at that time directing his efforts against another man than the accused, the latter having left the scene of the affray before the disarming took place.

3. MURDER—*an intent to murder not essential.* One who shoots at another with the unlawful purpose of maiming, wounding or disabling him may be guilty of murder if death results, even though he may not have intended to murder the deceased at the time he fired the shot.

4. SAME—*doctrine of self-defense embodies element of real or apparent danger.* Self-defense cannot be predicated upon the fact that the accused, at the time of the shooting, reasonably appre-

hended that the deceased had formed a design to take his life or do him great bodily harm, unless there was also real or apparent danger of his carrying out the design.

5. INSTRUCTIONS—*when party cannot complain of modification.* A party whose instruction as offered is refused by the court but who accepts the court's suggestion that if he will make certain modifications the court will give the instruction, cannot afterwards urge as error the refusal of the instruction as offered and the giving of the same as modified.

6. SAME—*involved instruction not approved by the courts.* An instruction in a criminal case which is unnecessarily long and involved, and drawn for the purpose of leading the jury, by a progressive process, to assent to a proposition from which a conviction of the accused follows, is not approved, even though the language used may be accurate.

7. SAME—*when question whether an instruction should have set out section 148 of the Criminal Code does not arise.* The question whether an instruction for the People in a murder case setting out section 147 of division 1 of the Criminal Code, relating to self-defense, and section 148, relating to justifiable homicide, in so far as it is applicable to the doctrine of self-defense, should have set out the latter section in full does not arise where the defendant did not ask for an instruction to that effect.

8. SAME—*when instruction as to effect of killing in revenge is properly given.* It is proper, in a murder trial, to give an instruction holding that the law of self-defense cannot be successfully invoked by a defendant if he acted from a spirit of revenge or from a spirit of utter disregard for human life at a time when he had no reasonable ground to apprehend injury to himself, where there is evidence in the record tending to support the state of facts to which the law announced is applicable.

9. SAME—*referring to witness as "he" is not misleading, as excluding female witnesses.* An instruction announcing the rule of law relating to the credibility of witnesses which refers to the witness as "he" and to the testimony as "his testimony" does not tend to mislead the jury into the belief that the rule announced would not apply to the female witnesses who had testified in the case.

10. SAME—*when instruction relating to circumstantial evidence has support in the evidence.* An instruction defining circumstantial evidence and stating that the same is legal evidence in a criminal case is properly given, where the accused left the State after the killing and there are other important circumstances arising from the attempt of the accused to prove that the fatal shot was fired by another than himself.

11. NEW TRIAL,—*what newly discovered evidence is not ground for new trial.* The fact that a new witness will testify that the deceased, after receiving the fatal wound, attempted to kill the accused, who fired no shot after he came within sight of the witness, is not ground for new trial, since such fact is not inconsistent with the theory of the prosecution that the accused was the aggressor and throws no light upon that question.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

On May 3, 1906, the grand jury of Cook county returned an indictment charging Francesco Morello, the plaintiff in error, (hereinafter referred to in this statement as the defendant,) with the crime of murder, committed by shooting Fillipo Anarino with a revolver on March 21, 1905, in the village of River Forest, in said county. Fillipo Anarino, as a result of a wound so received, died March 25, 1905. Upon a trial in the criminal court of Cook county Morello was found guilty of murder as charged and his punishment was fixed by the jury at imprisonment in the penitentiary for a term of fourteen years. After overruling a motion for a new trial and a motion in arrest of judgment the court pronounced judgment and sentence in accordance with the verdict. Morello seeks by this writ of error to obtain a reversal of the judgment of the criminal court.

Most of the witnesses in this case were Italians who had lived in America only a short time and were unable to speak the English language. Their testimony was given through an interpreter, and as it appears in the record abounds in contradictions and inconsistencies.

The deceased and the defendant had lived in America about three years. Each was about twenty-five years of age at the time of the shooting. They lived in the same house at 91 Lake street, in the village of River Forest. Both followed the same occupations, viz., working on the railroads as laborers during the winter and peddling goods during the remainder of the year. The house at 91 Lake street consisted

of two stories (known herein as the first story and second story) and a basement. The defendant lived in the basement with his brother, Cologero Morello, and his uncle, Antonio Delisi, while the deceased and his brother, Joseph Anarino, lived with Laborio Pusatere and his wife, Saveria Pusatere, in the first and second stories. A stairway on the outside of the house led from the ground to the first story. The foot of this stairway was near the entrance to the basement. The stairway leading from the first to the second story was on the inside of the house.

Lake street, in the village of River Forest, runs east and west. The house above mentioned is on the south side of that street. The first street south of Lake is Center avenue. An alley runs through the block from east to west, midway between Lake street and Center avenue. At the time of the shooting Antonio Pusatere, a cousin of the defendant, lived at No. 80 Center avenue, being across the alley from 91 Lake street. The lot at 91 Lake street is about two hundred feet deep. On the rear of this lot are two barns connected by an open shed, which is used as a passageway between the alley and premises at 91 Lake street. About fifty feet south of the house occupied by deceased and defendant, and on the same lot, was a small house occupied by one Joseph Cutino.

It appears that during the afternoon of March 21, 1905, Cologero Morello and the deceased had trouble, which resulted in a fight. The defendant was away from home working on the railroad tracks when this trouble occurred, and, so far as the record shows, knew nothing about it. He returned from his work about 5:30 P. M., coming across the lot occupied by his cousin, Antonio Pusatere, and through the open shed to his own home. The testimony of the various witnesses who claim to have been present or near at the time of the shooting differs quite materially as to what took place immediately prior thereto.

Joseph Anarino, a brother of the deceased, was the principal witness for the State. He says that he and the deceased

were up-stairs when he saw the defendant coming across the yard towards the house; that he went down-stairs and met the defendant at the entrance to the basement; that he had some words with the defendant in regard to the trouble which had occurred between their brothers that afternoon; that the defendant made some remark to him and he slapped the defendant in the face; that the defendant then drew a revolver from his pocket and fired at the witness but did not hit him; that witness had no weapon, and turned and ran up the stairs to get a shot-gun which was in a room on the upper floor; that while he was up-stairs his brother, who had been in a room on the first floor, went out and down the outside stairs to the ground; that just as he reached the ground the defendant fired at the deceased; that deceased fell to the ground and the defendant fired three more shots at deceased while he was on the ground; that witness saw the shooting of his brother from an up-stairs window; that when witness came down with the shot-gun defendant ran through the open shed into the alley and across the lot at 80 Center avenue; that witness followed him to the alley, where the shot-gun was taken away from him by two men. He further testified that his brother had no revolver at any time during the affray; that a number of other persons were in the yard at the time of the shooting, including Delisi, Antonio Palamasino and Joseph Cutino; that after defendant had ceased shooting, Antonio Pusatere came through the shed into the yard, fired two shots at deceased and three into the ground.

Saveria Pusatere was in the house cooking when the defendant approached the house. She first says that deceased was in the house when they heard a voice,—nothing but a voice,—and deceased went out, after which she heard shots. At another time during her testimony she says that deceased went out after defendant shot at Joseph Anarino, and that the defendant then shot three times in succession at deceased.

Laborio Pusatere, with whom deceased and his brother lived, testified that he returned home that evening with de-

fendant; that when he entered his house deceased and his brother, Joseph, were sitting there by their beds; that Joseph Anarino got up and went out of the door; that soon afterwards he heard a shot; that this shot was fired at Joseph Anarino, and that deceased had just gone down-stairs and was then at the foot of the stairs; that deceased tried to pick up a stick from the ground and fell down, and that defendant then shot at him three times while he was on the ground; that no one other than defendant had done any shooting; that deceased got up and ran after defendant as far as the alley and came back and went up-stairs; that he saw no weapon in the hand of the deceased at any time; that after deceased had gone in the house Antonio Pusatere came into the yard and fired five shots.

Mrs. Eliza Brown, who lived in a house adjoining that at 91 Lake street, was called as a witness by the prosecution. She says she was in her yard, emptying ashes, when she saw a number of Italians, including the defendant and deceased, quarreling in the yard; that they had been quarreling several minutes when the defendant shot deceased; that he shot three times; that at the first shot deceased threw up his hand,—put his hand up to his breast; that the deceased had nothing in his hands and that she saw no one do any shooting except defendant.

Joseph Cutino, also a witness for the State, testified that while he was in his house he heard a noise; that he came out of the house and saw the defendant, the deceased, Joseph Anarino, Cologero Morèllo and Palamasino in a group; that Joseph Anarino slapped the defendant, who started to run; that the defendant took out his revolver, and, while running towards the alley away from the others, fired one shot at Joseph Anarino and then three shots at the deceased; that when the defendant fired at deceased the latter ran after him with a revolver in his hand; that these two ran towards the alley, and that witness heard a number of shots after that but does not know who fired them.

The defendant testified that when he returned to his home on the afternoon of March 21, 1905, while starting to open the door to the basement he was approached by Joseph Anarino, Palamasino and the deceased; that after some words the former slapped defendant, who attempted to strike back, when he was grabbed by Palamasino; that Joseph Anarino took out a knife about ten inches long and tried to thrust the knife into defendant, who broke loose from Palamasino; that deceased then shot at defendant and defendant pulled out his revolver and began shooting, the deceased also shooting again at defendant; that defendant ran towards the alley, with deceased following and shooting at him; that they ran into the yard at 80 Center avenue and deceased fired at Antonio Pusatere, who in turn fired two shots at deceased.

The account given by Antonio Delisi corroborates, to a large extent, the testimony of the defendant, while Palamasino says that the deceased slipped and fell while running after the defendant, and when he got up he had a revolver in his hand and was shooting at the defendant. After the shooting the defendant fled, going immediately to Chicago and from there to Pittsburg, Pennsylvania, where he was arrested about a year after the tragedy. He says he went away through fear of violence at the hands of Anarino's friends, while the theory of the prosecution is that he disappeared to avoid prosecution. Antonio Pusatere also left immediately and was not heard from until after verdict in this cause, when he made an affidavit setting forth his version of the affair, which was made one of the grounds for a new trial.

The deceased received two bullet wounds during the affray,—one in the upper part of the thigh, which was merely superficial, and the other in the lower part of the abdomen, which caused his death.

Plaintiff in error urges as grounds for reversal that the court erred, first, in refusing his instructions numbered 1, 2, 3, 4 and 5; second, in requiring him to modify his twenty-first instruction to avoid its refusal; third, in giving the

People's instructions numbered 2, 12, 13, 19 and 20; fourth, in the admission and rejection of evidence; fifth, in refusing to grant a new trial on the ground that the verdict was contrary to the evidence; and sixth, in refusing to grant a new trial on the ground that evidence material to the defense of plaintiff in error had been newly discovered.

C. A. WILLIAMS, and A. J. HANLON, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (JAMES J. BARBOUR, of counsel,) for the People.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Self-defense was interposed as a justification for the killing of Fillipo Anarino. There was also evidence tending to show that the fatal shot might have been fired by Antonio Pusatere. The testimony of the witnesses called by the respective parties is very conflicting. We do not think the verdict is against the manifest preponderance of the evidence. Whether, under the proof in this case, there was reasonable doubt of the guilt of the plaintiff in error was a question peculiarly within the province of the jury, and their determination cannot be here successfully attacked on the ground that it was contrary to the evidence.

Saveria Pusatere testified, for the People, that she saw plaintiff in error fire at deceased with a revolver three times. She was then asked, "What happened to Fillipo when the shots were fired, if anything?" and she replied that the shots killed him. A motion was made to strike this answer out, on the ground that it was not responsive. That motion was denied. The answer stated an ultimate fact that was material to the issue being tried, and where the only objection made was that it was not responsive, we think the determi-

nation of the question whether the motion should have been allowed rested to some extent in the discretion of the trial court, and we are not disposed to hold, in the light of other testimony in this record tending to show that one of these shots did cause the death, that there was any abuse of discretion in denying the motion. Had the motion been put on the ground that the necessary preliminary proof showing that the witness knew what caused the death of the deceased had not been made, a different question would be presented.

Antonio Delisi testified, on behalf of plaintiff in error, that Morello and the deceased began to exchange shots back of the house; that Morello started to run through the alley, with the deceased after him; that after that he saw Antonio Pusatere following, shooting into the ground; that Joseph Anarino started after Morello and Antonio Pusatere, shooting at Pusatere with a shot-gun; that the witness and Vorass, the owner of the house at 91 Lake street, went out in the alley, caught Joseph Anarino and took the gun away from him. Plaintiff in error then sought to show what Joseph Anarino said at the time he was disarmed, on the theory that it was a part of the *res gestæ*. It does not appear from the testimony of this witness that Joseph Anarino and his brother, the deceased, were then acting in concert. The activities of Joseph Anarino with the shot-gun, according to Delisi, seem to have been directed against Antonio Pusatere, and at the time Joseph was disarmed the shot which caused the death had been fired, plaintiff in error had fled and the deceased was not present. It is manifest that anything then said by Joseph Anarino was not part of the *res gestæ*.

The first instruction asked by plaintiff in error was refused. It would have advised the jury that they could not convict the defendant unless they were satisfied, beyond a reasonable doubt, that he intended to murder the deceased at the time he fired the shot; and this instruction is said to be a correct statement of the law for the reason that it appears from the opinion in *Henry* v. *People*, 198 Ill. 162, to

have been given in that case.  The instruction referrèd to
is found at the foot of page 183 of that volume, but the pro-
priety of that instruction does not seem to have been con-
sidered in that case and the court did not there determine
whether or not it was a correct statement of the law.  If
Morello fired with unlawful purpose to maim, wound or dis-
able the deceased, and death resulted from the shot, he was
guilty of murder.  "Intent to kill does not enter into the
definition of murder.  It is enough if the unlawful killing
be with malice aforethought, either express or implied."
*Adams* v. *People,* 109 Ill. 444.

The second and third instructions asked by Morello and
refused by the court are to the effect that if the defendant,
at the time of the shooting, reasonably apprehended that the
deceased had formed a design to take his life or do him great
bodily harm, then there should be an acquittal.  Both of
these instructions were wrong, in that they omitted the ele-
ment of real or apparent danger at the time the shot was
fired.  It may be that at that time the deceased had formed
a design to take the life of plaintiff in error or do him great
bodily harm but that there was no real or apparent danger
of his carrying out that design.

The fourth and fifth instructions asked by the plaintiff
in error were properly refused for the reason that justified
the refusal of the first instruction requested by him.

In considering the instructions asked, the court marked
the twenty-first instruction requested by plaintiff in error
"refused," his purpose then being not to give that instruction
to the jury, but thereafter, and before the jury was instructed,
the court said to counsel for Morello that if counsel would
make a certain modification in that instruction it would be
given to the jury.  Thereupon counsel took the instruction
and made the suggested modification, tendered it to the court
and requested that it be given in its modified form, where-
upon the court erased the word "refused," which he had
theretofore written on the instruction, marked it "given,"

and read it to the jury with the other instructions given. It is now insisted that the instruction as originally drawn stated a correct proposition of law and that as modified it is erroneous, and the court's refusal to give it as first requested is relied upon for reversal. Plaintiff in error is not in a position to urge this objection. It is not as though the court had informed counsel that he had determined to modify the instruction and had requested counsel to make the modification for him, indicating what it should be. In that event, no doubt, the modification would be the modification of the court. In this instance, however, the court had determined to refuse the instruction, but suggested that if a certain modification was made he would give it. Counsel made the modification and asked that the instruction as modified be given. We think under such circumstances the modification was that of plaintiff in error, and not of the court.

The second instruction given at the request of the People is said to be in contravention of the law as stated in *Kipley v. People,* 215 Ill. 358, in that it ignores the defenses interposed. The first part of this instruction is, in substance, the same as instruction No. 61 set out on page 367 of the last mentioned volume, such first part being as follows, to-wit:

"The court instructs the jury that if the People of the State of Illinois have proven by the evidence, beyond a reasonable doubt, each and every one of the following facts, you should find the defendant guilty: First, that somebody is dead; second, that the person is Fillipo Anarino; third, that the said Fillipo Anarino came to his death on or about March 25, 1905, in the county of Cook and State of Illinois; fourth, that the death of the said Fillipo Anarino was caused by criminal means in manner and form as charged in the indictment and as defined in the instructions of this court; fifth, that the person who so used such criminal means to cause the death of the said Fillipo Anarino is the defendant, Francesco Morello."

In the *Kipley case* doubt was expressed as to the accuracy of that instruction, and in the case at bar the prosecution has attempted to obviate the objection considered by the court in the *Kipley case* by adding to the fourth proposition a clause which does not change its meaning and by adding to the instruction a lengthy and involved paragraph, the purpose of which evidently was to call the attention of the jury to the question of self-defense, and to any evidence or lack of evidence which might reduce the grade of the crime from murder to manslaughter. The language used in the added paragraph, however, is not apt and certain and is not in every respect accurate, and does not entirely obviate the objection to the instruction which was pointed out by the court in the *Kipley case*. The instruction is unnecessarily long, covering more than a page of the printed abstract, and this increased the possibility of the jury being confused thereby. The simple propositions covered should have been concisely stated in a dozen lines. Instructions of the general character of this one do not meet with the unqualified approval of this court, even when the language is accurate. They are apt to be found persuasive by a jury. In the instruction the first three of the numbered propositions, as above set out, are ones about which there is little or no controversy; the fourth is seriously controverted, and the fifth is crucial. The manifest purpose of so drawing an instruction is to lead the jury, by a progressive process, to assent to a proposition from which conviction follows. It is unlike an instruction which states to a jury, for their determination, several material propositions which are really controverted.

If this instruction stood alone it would necessitate a reversal, but we think its ambiguity and uncertainty are cured by the twenty-sixth, thirty-fourth, thirty-fifth, thirty-sixth and thirty-seventh instructions given on the part of plaintiff in error, by which the law pertaining to self-defense and to the right of the defendant to a verdict of acquittal if there

remains in the mind of the jury, upon a consideration of the evidence, any reasonable doubt of the truth of the charge against him, is fully and clearly stated to the jury in terse, vigorous and unmistakable terms.

Objection is also made to the twelfth instruction given on the part of the People, which follows the language of section 149 of chapter 38, Hurd's Revised Statutes of 1905, in reference to self-defense, and the language of section 148 of that chapter in so far as it is applicable to that defense. This instruction seems to be unobjectionable. The only thing that is urged against it is that section 148, *supra,* being the section which defines justifiable homicide, should have been given to the jury in full. That question would have arisen had plaintiff in error asked an instruction of that character and had that instruction been refused.

The thirteenth instruction for the People, which counsel also deem erroneous, advised the jury that the law of self-defense could not be successfully invoked by the defendant if he acted from a spirit of revenge or from a spirit of utter disregard of human life, at a time when he had no reasonable cause to apprehend injury to himself. It is said that there is no evidence in the record upon which to base this instruction. That statement disregards the testimony of several witnesses for the prosecution which tends to prove a state of facts to which the law announced by the instruction would be applicable.

The nineteenth instruction given on the part of the People states the law by which the jury should be governed in determining the credibility of witnesses, and tells them that they may consider all the circumstances under which any witness has testified. The language in the portion of the instruction which follows refers to such witness as "he," and speaks of the demeanor and interest of that witness as "his demeanor" and "his interest," and this is said to be erroneous, for the reason that it applies only to male witnesses, while two female witnesses testified for the prosecution and

no female witness testified for the defendant. We do not think that a jury possessing the statutory qualifications could be so obtuse as to believe from this instruction that they should apply any different tests in determining the credibility of male witnesses than they should apply in determining the credibility of female witnesses.

By instruction No. 20, given at the request of the People, circumstantial evidence was defined, and the jury were instructed that evidence of that character was legal evidence in a criminal case. Relying upon *Cunningham* v. *People*, 210 Ill. 410, and *Sokel* v. *People*, 212 id. 238, plaintiff in error urges that this instruction was erroneous because there was in this case no circumstantial evidence tending to show his guilt. If the jury believed that the plaintiff in error fled to avoid prosecution, that was a circumstance indicating guilt. The claim of plaintiff in error that the shot which killed the deceased was, or may have been, fired by Antonio Pusatere makes important many circumstances indicating that the fatal shot was fired by Morello. Such circumstances made the instruction proper.

One of the grounds of the motion for a new trial was the existence of newly discovered evidence alleged to be important to the cause of the defendant below. That evidence was shown by the affidavit of Antonio Pusatere. The statements contained therein are to the effect that the affiant has been residing in Coal City, Grundy county, Illinois, since March 24, 1905; that he was in the rear of the house at 80 Center avenue, in River Forest, on the evening of March 21, 1905; that as he stood there he heard shooting north of him, and that presently Morello came from the north through a passageway and ran south, pursued by the deceased, who was about ten feet behind Morello; that the deceased had a revolver in his hand and fired one shot at Morello after they came within the range of affiant's vision; that affiant admonished the deceased not to shoot any more, when the deceased opened fire upon the affiant, whereupon the latter drew a re-

226—26

volver from his pocket and fired two shots into the ground; that the deceased turned and went to the north towards the alley, and as he did so Joseph Anarino appeared in the alley with a shot-gun and fired one shot. According to the affidavit Morello fired no shot after affiant saw him, but continued on to the south, and was still proceeding in that direction when affiant last saw him, which was at the moment when the deceased fired upon the affiant. It appeared from this affidavit and from the affidavit of plaintiff in error that it was impossible for plaintiff in error to produce this witness upon the trial of the cause, for the reason that, although Morello used due diligence, he was unable to ascertain the whereabouts of the witness until after the verdict had been rendered. It is certain from the affidavit of Antonio Pusatere that the shot which killed the deceased had been fired before affiant saw the deceased or Morello on this occasion. His testimony, therefore, would throw no light whatever upon the question as to whether or not Morello acted in self-defense. The fact that the deceased, after receiving the wound which proved fatal, may have attempted to kill Morello is not inconsistent with the theory of the prosecution that Morello fired the shot which inflicted that wound, without any lawful excuse or justification. The statements of the affidavits were not such as to warrant the court in granting a new trial.

We have discussed and disposed of every point presented by the brief and argument of plaintiff in error. Several of the errors relied upon are wholly devoid of merit and might well have been disposed of without being discussed in this opinion. In view of the importance of the case, however, we have stated at length our views in regard to each of the questions raised, and conclude that there is in this record no reversible error.

The judgment of the criminal court of Cook county will be affirmed.

*Judgment affirmed.*