The People of the State of Illinois, Plaintiff-Appellee, v. Terence Paul Brady, Defendant-Appellant.

(No. 56260;

First District (5th Division)—September 28, 1973.

Francis E. Andrew, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant was convicted after a jury trial for the October 8, 1969, sale of morphine sulphate and cocaine hydrochloride, both narcotic drugs, in violation of section 22—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1969, ch. 38, § 22—3), and after a hearing in aggravation and mitigation was sentenced to two concurrent terms of 10-12 years. He appeals contending that the trial court committed reversible error in admitting highly prejudicial testimony concerning two unindicted narcotic sales; he was denied a fair trial by the State's describing him in its closing argument as a drug dealer who sold narcotics to children and emphasizing the two prior unindicted sales, neither of which was supported by proper evidence in the record; he was denied a fair trial by the trial court's failure to grant a mistrial on motion or, in the alternative, the court's failure to strike certain testimony accompanied by an instruction to disregard the testimony. Defendant also urges that the case should be remanded for sentencing consistent with the new provisions for sentencing.

EVIDENCE

*Richard J. Schlobohm,* for the State:

He is a Chicago police officer assigned to the Narcotics Section. On September 17, 1969, while working undercover in street clothes, he met defendant for the first time on the street. After some discussion concerning marijuana, they made arrangements for the witness to obtain some from the defendant at the witness' hotel room—room 432 of the Diversey Arms Hotel. Defendant sold him a brown bag which contained a crushed green plant.

On September 18, 1969, defendant again approached him on the street and told him that some good cocaine was available. They met a half hour later at Diversey and Surf streets and he purchased a packet containing some white powder, which was later tested and found not to be cocaine or any other narcotic substance.

On October 8, 1969, he met defendant on the street and complained, "The stuff wasn't too good." Defendant responded, "Come up to my room about seven o'clock at night and we'll take care of business." The witness contacted his partners, detectives Lester Foy, Donald Senese, and Thomas Witchek, who concealed themselves in the hallway near defendant's hotel room in the Rienzi Hotel at 600 West Diversey. The witness then knocked on defendant's door, declaring that "Pete" was there. Defendant opened the door and after discussing the bad batch of cocaine handed him two bags in exchange for fifty dollars saying, "This is real good stuff. Don't worry." Later the bags were turned over to Detective Witchek.

*Thomas Witchek,* for the State:

He is a Chicago police officer assigned to the Narcotics Section. On October 8, 1969, after a meeting with Schlobohm, the witness, Foy, and Senese, all in plain clothes, went to the Rienzi Hotel and stationed themselves in the sixth floor hallway around the corner from defendant's room. He observed Schlobohm exit from the elevator, knock on the door to Room 621, and a man step out partially into the hallway. Schlobahm said, "I don't want anymore bad stuff," and "if this stuff is bad, I'll be back to see you." Although he didn't have a full view of the man's face, he testified that the man was the defendant. He saw the man hand something to Schlobohm. The witness then joined Schlobohm in the elevator. Schlobohm handed him the two packets received in the exchange. The packets were subsequently determined by the police laboratory to be narcotic substances.

*Lester Foy,* for the State:

He is a Chicago police officer assigned to the Narcotics Section. On September 18, 1969, after a conversation with Schlobohm, he and Senese proceeded to the intersection of Surf and Clark streets, where he ob-

served Schlobohm meet the defendant on the street corner, and after a brief conversation, Schlobohm handed defendant some money in exchange for a package.

On October 8, 1969, after a conversation with Schlobohm, Witchek, Senese and he proceeded to the Rienzi Hotel and stationed themselves in the sixth floor hallway. He observed Schlobohm approach room 621, knock on the door, and engage the occupant in a conversation lasting several minutes. After the occupant left the building, the witness and Senese knocked on the door to room 621, but no one answered.

*Donald Senese,* for the State:

He is a Chicago police officer assigned to the Narcotics Section. On September 17, 1969, after conversing with Schlobohm in his Diversey Arms hotel room, he and Officer George Mays, both dressed in plain clothes, went into the hallway for the purpose of secretly observing the door to Schlobohm's room. The witness then observed the defendant walk up to the door with a brown bag in hand, knock, and enter the room. When defendant left the room, he was no longer carrying the bag.

On September 18, 1969, after a conversation with Schlobohm, he and Foy, both in plain clothes, proceeded to the intersection of Surf and Clark streets where he observed Schlobohm and defendant engage in a conversation and Schlobohm twice reach into his pockets.

On October 8, 1969, after a conversation with Schlobohm, he stationed himself along with Foy and Witchek in the Rienzi Hotel sixth floor hallway. He observed Schlobohm approach room 621, knock on the door, and engage the occupant in a conversation lasting several minutes. After the occupant left, the witness and Foy knocked on the door, and no one answered.

The witness served defendant with an arrest warrant on November 4, 1969. During direct examination, in response to a question whether defendant was searched pursuant to the arrest, the witness responded, "Yes, Sir. We placed him under arrest, apprised him of his constitutional rights. He stood mute." Defense Counsel moved for a mistrial based on the witness' testimonial comment relative to defendant's having chosen to remain silent. After a hearing in chambers, the judge ruled that the comment be stricken, agreed to instruct the jury to disregard it (although such an instruction was never given), and denied the motion for a mistrial.

*Charles Vondrak,* for the State:

He is a chemist for the Chicago Police Department. He testified that the laboratory tests of the two substances sold to Schlobohm on October 8, 1969, showed that one substance was morphine sulphate, the other cocaine hydrochloride, both narcotics.

*Adele Cunliffe,* for the defense:

She is supervising manager of the Diversey Arms Hotel. She brought into court hotel registration cards which showed that room 432 (the room Schlobohm claimed he rented) was rented from September 14, 1969 to October 3, 1969 to a Mr. and Mrs. Michael Ortner. She remembered Michael Cain (alias Michael Ortner) well, ordering him to check-out before his term expired on October 5, 1969. She did not remember seeing Officer Schlobohm before trial. No one was given free access to the rooms. A Vincent Cipola worked the night shifts at the registration desk during September and October of 1969.

*Terence Brady,* for himself:

He denied that the alleged September 17, 1969, meetings between Schlobohm and himself on the street or in Schlobohm's hotel room ever took place. While he was walking by the intersection of Diversey and Surf on September 18, 1969, Schlobohm stopped him and asked if he was a bartender at the Panel Lounge. It was the first meeting between the two. He denied any sale of narcotics and denied that the two exchanged any objects.

On October 8, 1969, there were two guests in his apartment, Phyllis Pike and Dick Harder, when he answered a knock on his apartment door. The voice on the other side said, "A friend of Michael Cain's." After defendant opened the door, Schlobohm asked if Cain was there, and defendant replied "Why should he be?" After several seconds, Schlobohm left, and shortly thereafter defendant also left the room. Defendant stated that he did not attempt to contact either Pike or Harder about testifying on his behalf.

*Arnold Rosen, Doris Patterson* and *Jean Patterson,* for defendant:

All three testified as to defendant's reputation in his community for truth and lawfulness.

OPINION

■■ Defendant argues that the admission of the testimony concerning the two prior, unindicted sales of September 17 and 18, 1969, constituted reversible error. Defendant asserts that since he admitted coming into contact with Officer Schlobohm on October 8, his identity was not in issue and since he denied giving Schlobohm a bag or receiving money, his knowledge was not in issue. The same assertion raised in *People v. Cole,* 29 Ill.2d 501, 504, 194 N.E.2d 269, 271, a case involving a sale of narcotics, was rejected:

> "This assertion overlooks the fact, however, that these were two elements to be proved by the People and there was no way of knowing what defense, if any, would be interposed. (See 2 Wigmore, Evidence 3rd ed. sec. 307.) The People cannot be required

to confine this evidence of prior transactions to rebuttal since there may be no rebuttal if defendant offers no evidence."

We follow *Cole* and hold that since the prior sales showed a relationship between the parties and therefore explained and corroborated Schlobohm's account of the October 8 transaction, the testimony was properly admitted.

Defendant next argues that the following four references in the prosecutor's closing argument denied him a fair trial: two references to defendant as a "drug dealer," the one-time charge that defendant was selling narcotics to children, and the comment that the September 18, 1969, sale was still a crime even though a laboratory test determined that the substance was not cocaine or any other narcotic. Defendant argues that the charge that defendant was selling narcotics to children is totally unsupported in the record and that the other three references rely on evidence improperly in the record since testimony concerning the September 17 and 18 sales should not have been admitted and only serve to emphasize defendant's propensity to commit the charged crime.

We have already held that the testimony regarding the September 17 and 18 crimes was properly admitted. The court properly instructed the jury that evidence of crimes other than the one charged in the indictment should not be considered on the issue of whether defendant committed the charged crime. We follow *People v. Jones,* 131 Ill.App.2d 361, 268 N.E.2d 248, and hold that since the evidence of defendant's guilt was so strong and convincing, the prosecutor's comments referring to the testimony about the September 17 and 18 crimes did not deprive defendant of a fair trial.

■■ The reference in the closing argument to defendant's selling narcotics to children was improper. However, in the absence of a clear showing that the trial judge failed to control the situation and permitted it to get out of hand so as to raise prejudice against defendant, appellate courts will not disturb the decision. (*Sarelas v. Lerner,* 94 Ill.App.2d 30, 236 N.E.2d 394; *Bruske v. Arnold,* 100 Ill.App.2d 428, 241 N.E.2d 191.) We find that the State's closing argument did not deprive defendant of a fair trial.

Defendant argues that he was denied a fair trial as a result of the trial court's failure to grant a motion for mistrial, or, in the alternative, striking certain testimony and instructing the jury to disregard it. The following testimony was given by Officer Senese regarding defendant's silence upon arrest:

"PROSECUTOR: All right. Did you have occasion to search Brady's person after you arrested him?

OFFICER SENESE: Yes, sir. We placed him under arrest, ap-

prised him of his constitutional rights. He stood mute. We made a search of his person for contraband or weapons.

DEFENSE COUNSEL: I move for a mistrial and would like to be heard on it."

In chambers, the prosecutor moved that the answer ("He stood mute") be stricken as being unresponsive. The judge denied the motion for mistrial, but he agreed that he "will strike it and will instruct the jury." He never did instruct the jury to disregard the remark in question, apparently through inadvertence. The exercise by the accused of his constitutional right against self-incrimination shall not be subject to comment at trial. *Miranda v. Arizona*, 384 U.S. 436.

■■■ In deciding whether the failure to grant a mistrial or, in the alternative, striking the testimony and instructing the jury to disregard it amounted to reversible error, we apply the standard established in *Chapman v. California*, 386 U.S. 18. The Supreme Court there held that in order for an error involving the denial of a federal constitutional right to be held harmless in a state criminal case, the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction. In *United States v. Wick*, 416 F.2d 61, the court considered the prejudicial effect of a reference during the trial to defendant's remaining silent. Applying *Chapman*, the court at 416 F.2d 61, 62 found no prejudicial error.

"Here, the two statements, one by the witness and one by the government attorney, amidst the overwhelming evidence against the defendant including two positive identifications, could not have contributed to the jury's verdict, and we do not think that he was prejudiced."

*Wick* involved comments by the prosecutor about defendant's silence. In the case at bar, we have the mere volunteered and unresponsive comment by a witness which is never repeated or emphasized by the prosecutor. Under *Chapman*, we hold that in view of the overwhelimng evidence against defendant, the trial court's ruling not to grant a mistrial is not reversible error, since it is our opinion beyond a reasonable doubt, that the jury's verdict was not affected thereby. (See *People v. McVet*, 7 Ill.App.3d 381, 287 N.E.2d 479.) For the same reasons, we hold that the trial court's failure to strike the comment in question and failure to instruct the jury to disregard it was not reversible error.

■■ Defendant's last contention is that because this cause has not yet reached final adjudication, it should be remanded to the trial court for resentencing under the Controlled Substances Act of 1971. Section 601 of the Controlled Substances Act of 1971 (Ill. Rev. Stat. 1971, ch. 56½,

§ 1601)[1] provides that the sentencing provisions of that Act shall apply to all cases that have not reached the "sentencing stage or final adjudication." The State contends that "final adjudication" should be read to mean any case after sentencing has been concluded. We reject this contention and follow the holding in *People v. Chupich,* 53 Ill.2d 572, 295 N.E.2d 1, that a case has been finally adjudicated within the meaning of section 601 (Ill. Rev. Stat., ch. 56½, § 1601) only when the last direct appeal has been decided or when the time for filing such appeal has run. Thus, the sentencing provisions of the Controlled Substances Act of 1971 should be applied to the case at bar.

The sale of the two narcotic substances by defendant falls under section 401 of the Controlled Substances Act of 1971 (Ill. Rev. Stat., ch. 56½, § 1401(b)) since less than 30 grams were involved. That section classifies the crime as a Class 2 felony. The sentencing provisions of the Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, § 1005—8—1) provides in section b that the maximum term for a Class 2 felony shall be between one and twenty years and in section c that the minimum shall be one year unless certain circumstances exist, but in no event shall the minimum exceed one-third of the maximum term set by the court.

The judgment of guilty is affirmed, but the sentence is vacated and the cause remanded. On remand the circuit court shall resentence the defendant within the guidelines of the Controlled Substances Act.

Affirmed and remanded with directions.

ENGLISH and SULLIVAN, JJ., concur.

---

[1] Section 1601 provides:
"Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted would be a violation of this Act, and has not reached the sentencing stage or final adjudication, then for purposes of penalty the penalties under this Act apply if they are less than under the prior law upon which the prosecution was commenced."