THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARGAREY BORAWSKI, Defendant-Appellant.

Fifth District    No. 77-44

Opinion filed June 5, 1978.

G. MORAN, J., dissenting.

James Geis, of State Appellate Defender's Office, of Chicago (Kenneth P. Ross, law student, of counsel), for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and John A. Clark, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Margarey Borawski, was charged in the circuit court of St. Clair County with the unlawful delivery of a controlled substance, methylphenidate (ritalin). Following a jury trial, she was found guilty as charged and sentenced to one year probation and fined $500. Defendant brings this appeal from the judgment entered.

On appeal defendant contends that: (1) certain errors were committed with regard to discovery; (2) errors were committed in the admission of certain evidence; and (3) she was not proven guilty beyond a reasonable doubt.

At trial, Agent James Lay of MEGSI (Metropolitan Enforcement Group of Southwestern Illinois) testified that at 8:45 p.m. on August 19, 1975, he and Agent Dennis Sheldon drove to a residence, which Sheldon entered while Lay remained outside. Ten minutes later, Sheldon reappeared with a woman Lay identified as defendant. Sheldon spoke with defendant for one or two minutes and then returned to the car. At this time he showed Lay a plastic bag containing a quantity of pink tablets. Lay stated that the plastic bag of pills was marked for identification and given to an evidence officer.

Next, Agent Sheldon testified that prior to the instant transaction, he had purchased drugs from defendant on August 15 and again early in the day on August 19. He stated that during this second transaction he was told by defendant to return later that evening if he wished to buy ritalin. As agreed, he later returned and bought 50 tablets of ritalin for $50. He stated that defendant counted the 50 tablets from a prescription vial and placed them into a plastic bag. State's exhibit No. 1 consisting of the bag and its contents was identified as that which was given to him by

defendant. Sheldon stated that following the transaction, he and defendant discussed a possible future purchase of barbiturates after which Sheldon left. Sheldon further stated that he thereafter gave the bag and its contents to evidence officer Sam Kemp.

Agent Kemp then testified that he had received State's exhibit No. 1 from Sheldon on August 25. On cross-examination he stated that he did not know the whereabouts of the bag and its contents between August 19, when it was purchased, and August 25, when it was turned over to him.

The State presented further evidence showing that the plastic bag contained 10.1 grams of methylphenidate.

On behalf of the defense, defendant testified that she was suffering from nerve damage as a result of an automobile accident and consequently was prescribed ritalin to relieve her pain. She also stated that she had first met Sheldon in June 1975, at which time he had attempted to purchase drugs from her but she refused to sell. He returned in June and asked her out on a date but she refused. She stated that she again met him once or twice in August and once in September. On this last occasion he again offered to buy drugs from her but she stated that she refused to sell any. Defendant denied making the instant transaction and stated that she was not at home on the evening of August 19 but was out celebrating her brother's birthday.

Turning first to defendant's contentions concerning discovery, the record shows that the instant indictment was filed on February 19, 1976. On February 27, defendant filed a motion for discovery which was answered by the State on March 12 listing Agent Sheldon as a possible witness. Thereafter the cause proceeded to trial on August 16. On the next day, after the State rested its case-in-chief and following a lunch break in the proceedings, defendant filed a motion to require the State to produce any evidence of "criminal complaints, arrest, conviction, or any pending criminal charge" against Sheldon. At an in-chambers conference on the motion, defense counsel stated that during the lunch break, there had been an "allegation" that Sheldon had been charged with rape and that he had been suspended from the police force at some point in the past. Defense counsel also stated that she was aware of no more but of this bare allegation. During the ensuing argument, the defense counsel took the position that the State was required to automatically disclose such information. The prosecutor stated, however, that he was certain that there were no criminal convictions of Sheldon and that, in fact, all the material in his file had been duplicated and given to the defense. The court nonetheless granted the defense motion and ordered the State to produce "any material that is of an impeaching nature as to Dennis Shel[d]on." Further, while noting that the defense had previously been specifically offered an opportunity to interview the State's

witnesses, the court ordered the State to make Sheldon immediately available for an interview. This was done. However, upon being informed of the allegations against him, Sheldon refused to be interviewed by defense counsel without the presence of an attorney, or the State's Attorney, to represent him. The court was so informed but the court noted that no private counsel was present who could represent Sheldon. In turn, defense counsel objected to conducting an interview in the presence of the State's Attorney. The court thereupon determined to itself conduct an in-chambers interview of Sheldon. The court, however, limited its examination of Sheldon to the single inquiry of whether Sheldon had ever been convicted of a felony. Sheldon replied that he had not. The defense attorney then requested that the court ask Sheldon if any criminal complaint had been lodged against him and if he had ever been suspended from his duties as a police officer. The court refused to ask these questions stating that they would be "irrelevant for impeachment purposes."

Upon this record, defendant now contends that the trial court erred in limiting her discovery of these matters. Citing *People v. Mason,* 28 Ill. 2d 396, 192 N.E.2d 835 (see also *People v. George,* 49 Ill. 2d 372, 274 N.E.2d 26; *People v. Hanks,* 17 Ill. App. 3d 633, 307 N.E.2d 638), defendant urges that such matters may have been a proper subject of impeachment and consequently were well within the proper scope of discovery. Further, defendant argues that the court "had no reason to limit defendant's legitimate question for evidence."

Under Supreme Court Rule 412 (Ill. Rev. Stat. 1975, ch. 110A, par. 412), the burden rests squarely upon the defendant, within limits (Supreme Court Rule 412(c)), to pursue and ascertain any relevant information in the preparation of his defense, and not upon either the court or the State. In the instant case, any current pending charges against Sheldon, if such existed, were a matter of public record which could be easily obtained. So too, any suspension of Sheldon as a police officer, if such occurred, was subject to easy ascertainment. With regard to this second matter, we note that Sheldon testified that he was, and had been, a police officer for six years. Any question remaining as to his status could have been explored during the defense cross-examination of him. The record shows that the defense had ample time to investigate Sheldon since, long before trial, the State listed his name as a potential witness. Further, before Sheldon had testified at trial, the defense was afforded an ample opportunity to interview Sheldon. Defendant simply failed to investigate the matters in question until the State rested its case at trial.

■■■ Defendant's contention herein is premised on the assertion that the lower court limited defendant's attempt to discover relevant evidence. This assertion is not supported by the record. Despite defendant's

untimely motion to produce, which the court could have denied (*People v. Schabatka*, 18 Ill. App. 3d 635, 310 N.E.2d 192, *cert. denied*, 420 U.S. 928, 43 L. Ed. 2d 400, 95 S. Ct. 1128; *People v. Robinson*, 13 Ill. App. 3d 506, 301 N.E.2d 55), the court nonetheless granted the motion. The prosecutor's representation to the court that the State had no other relevant evidence not already disclosed, was not challenged by defendant and no dispute is here raised that the State concealed any such evidence. Defendant's contention, however, is directed more toward the attempt to interview Sheldon. But it was not the court which refused the requested interview, indeed the court ordered that Sheldon be made immediately available for an interview. Rather, it was Sheldon who refused to be privately interviewed by defense counsel, and it was defense counsel who refused to conduct an interview under Sheldon's stated terms. While a defendant is entitled to a fair opportunity to interview prosecution witnesses, this right extends only to the opportunity itself since a court cannot compel a witness to answer questions submitted by defense counsel. (*People v. Jackson*, 116 Ill. App. 2d 304, 253 N.E.2d 527; *People v. Lewis*, 112 Ill. App. 2d 1, 250 N.E.2d 812.) In fact the court had, in effect, compelled Sheldon to answer the question of whether he had ever been convicted of a felony. That the court refused to ask the additional questions posed by the defense attorney, without regard to its reasons for so refusing, could not constitute error since the court was under no obligation to examine Sheldon from the start. If the information at issue existed at all, it was the duty of the defendant, not the court, to ascertain it. The trial court took every step at its disposal to aid defendant in her discovery despite the lateness of the attempt. If the information existed but remained unrevealed, fault lies with defendant, not with the court.

Defendant also contends that the State improperly failed to disclose a police report by Sheldon concerning a prior drug transaction which had taken place on August 15, 1975. The State disputes whether the report was specifically requested in defendant's discovery motion.

■■ The record shows the following cross-examination of Sheldon by defense counsel Judy Rau:

"Q. Did you make a report of your activities on the 15th?
A. Yes, ma'am.
Ms. Rau: Your Honor, may we approach the bench, please?
The Court: Yes.
(Conference out of the hearing of the jury.)"

The record is silent as to any ensuing discussion and it does not indicate that the issue, now asserted, was raised at any time before defendant filed a motion for a new trial. Assuming, *arguendo*, that the report was properly requested but not disclosed, the failure of defendant to seek any redress on this basis, constitutes a waiver thereof. *People v. Dees*, 46 Ill.

App. 3d 1010, 361 N.E.2d 1125; *People v. Wilson,* 32 Ill. App. 3d 842, 336 N.E.2d 92; *People v. Myers,* 20 Ill. App. 3d 83, 312 N.E.2d 741; *People v. Lanier,* 98 Ill. App. 2d 89, 240 N.E.2d 288.

Next defendant contends that there was error in the admission of testimony by Sheldon concerning the two prior drug transactions on August 15, and a third prior transaction early in the day on August 19. Further, that it was error for Sheldon to testify that, immediately following the instant charged drug transaction, defendant discussed with Sheldon a possible future drug sale.

Evidence of criminal acts of misconduct of a defendant, which are unrelated to the charged crime, is inadmissible because such evidence too strongly raises an unfair inference of the accused's propensity for crime. (*People v. Lehman,* 5 Ill. 2d 337, 125 N.E.2d 506; *People v. Romero,* 66 Ill. 2d 325, 362 N.E.2d 288.) Such evidence, however, may be admitted where it has substantial independent relevance, such as to show motive, intent, identity, the absence of mistake or accident, or the existence of a common scheme or design, and where its probative value for such a purpose clearly outweighs its prejudicial impact. *People v. McDonald,* 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Butler,* 31 Ill. App. 3d 78, 334 N.E.2d 448.

■■ We do not find in the instant case that the trial court abused its discretion in admitting the evidence of prior drug transactions between Sheldon and defendant since such was of value in showing the established relationship between the two and in explaining the ease with which Sheldon was able to purchase the ritalin on the evening in question. (*People v. Cole,* 29 Ill. 2d 501, 194 N.E.2d 269; *People v. Brady,* 14 Ill. App. 3d 830, 303 N.E.2d 528.) Further such evidence strengthened Sheldon's identification of defendant by showing his extensive opportunities to observe defendant. (*People v. Davis,* 14 Ill. 2d 196, 151 N.E.2d 308; *People v. Butler.*) For similar reasons, we find no error in the admission of the testimony that at the close of the instant transaction, defendant discussed a possible future sale. Moreover, this discussion was but a part of the full circumstances attending the commission of the crime and the testimony thereof served to give a complete picture of the transaction. (*People v. DePompeis,* 410 Ill. 587, 102 N.E.2d 813; *People v. Walls,* 33 Ill. 2d 394, 211 N.E.2d 699.) While we note that the record does not indicate that a limiting instruction was given to the jury, it also does not show that one was tendered by defendant.

After the State had rested its case-in-chief at trial, at the same in-chambers conference in which defendant presented her motion to produce which was previously discussed, defendant also presented a "motion to withdraw State's exhibit No. 1" objecting to the admission of the plastic bag and its contents on the grounds that there was a six-day

"gap" in the proof of the chain of custody thereof. No objection had been raised by defendant at the time this evidence had been admitted. In denying the motion, the court stated in part that since the evidence had been admitted, and was done so without objection, to reverse that ruling would be unfair to the State and confusing to the jury.

■■■ On appeal, defendant contends that the court erred in admitting this evidence. However, since defendant's objection had been raised after the State had rested its case, it came too late and the admissibility of the evidence cannot now be questioned. (*People v. Anthony*, 28 Ill. 2d 65, 190 N.E.2d 837; *People v. Polk*, 19 Ill. 2d 310, 167 N.E.2d 185.) Nor do we find that the trial court abused its discretion in denying defendant's motion to strike. The alleged gap in the chain of possession involved the period between August 19 and August 25. The record shows that during this period the plastic bag and its contents remained in the possession of Sheldon. However, he failed to explain how or where the evidence was kept during this time. Had an objection been promptly raised, the State would have had an opportunity to cure this failure. Nonetheless, nothing in the record suggests the possibility of tampering. Both Lay and Sheldon testified that when they obtained the evidence they placed a piece of paper containing their initials and the date into the plastic bag. Kemp stated that when it was turned over to him, he found that the plastic bag was "sealed" (although we note that chemist James Flynn, who in turn received the evidence from Kemp, described it as having been "tied"). Further, Lay and Sheldon testified at trial that the plastic bag and its contents appeared to be in substantially the same condition as at the time of the charged transaction. Absent any indication of substitution or other tampering, we find that a sufficient foundation was established under the circumstances. *People v. Harper*, 26 Ill. 2d 85, 185 N.E.2d 865.

Lastly, defendant contends that her guilt was not proven beyond a reasonable doubt. Upon a careful review of the record we find ample evidence supporting the jury's verdict. Accordingly, the judgment entered by the circuit court of St. Clair County is affirmed.

Affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

The defendant first contends that the trial court erred in admitting into evidence a plastic bag containing the controlled substance allegedly received from the defendant. In support of her contention she cites the insufficiency of the State's proof regarding the chain of possession of the

evidence from the time of its receipt by the investigating agent to the time of its delivery at the police station. From the testimony of the two investigating agents as well as that of the evidence officer, it appeared that there existed an unexplained six-day hiatus in the chain of custody. A former MEGSI (Metropolitan Enforcement Group of Southwestern Illinois) agent, Dennis Sheldon, testified that he received the controlled substance from the defendant at approximately 8:30 p.m. on August 19, 1975, that he and Officer Lay initialed and dated a piece of paper and that he placed the paper in the plastic bag. He admitted that he had not counted the tablets in the bag, although he had reported the quantity to be 50 tablets of ritalin. Sheldon and Lay both testified that Sheldon later delivered the plastic bag to Officer Kemp, the evidence officer. Kemp testified that he did not receive the bag from Sheldon until August 25, six days after the alleged purchase of the drugs. There was no evidence contradicting this crucial sequence of events. Criminologist James Flynn, who performed a chemical analysis of some tablets he received from Kemp on August 26, 1975, stated that the plastic bag had simply been *tied* in a knot.

At the close of the case in chief, the State offered into evidence the plastic bag and its contents. At that time defense counsel made no objection to its admission, whereupon the State rested and the court immediately recessed for lunch. After reconvening at 1 p.m., defense counsel promptly presented a written motion to strike the evidence and after that motion was denied, she made an oral motion for a directed verdict, citing the inadequate demonstration of chain of custody as specific grounds therefor. The trial court denied the motion, stating that to change its ruling would be unfair to the State and could somehow confuse or influence the jury. The court explained that it felt Sheldon had specifically testified that he delivered the plastic bag to Kemp on the 19th. Thus, in the trial court's opinion, there merely existed a question of witness credibility to be decided by the jury. I have carefully reviewed both Sheldon's and Lay's testimony and nowhere did either of them state that Sheldon delivered the package to Kemp on a particular date. Neither did they explain where or how the drugs were kept during the six-day interval. It must be assumed that during this time the bag containing the contraband remained unsealed. Moreover, no one along the chain actually counted the tablets themselves. An essential element in the proof of chain of possession is safekeeping. (*People v. Judkins,* 10 Ill. 2d 445, 140 N.E.2d 663.) These facts do not, in my opinion, demonstrate safekeeping of the contraband between August 19, 1975 and August 25, 1975. Unlike the procedure employed in *People v. Anthony,* 28 Ill. 2d 65, 190 N.E.2d 837, and *People v. Washington,* 41 Ill. 2d 16, 241 N.E.2d 425,

the bag containing the narcotics was not sealed and properly delivered to the crime laboratory. The court in *People v. Hanson,* 44 Ill. App. 3d 977, 359 N.E.2d 188, stated:

"When contraband is sought to be introduced, the State must show a sufficient chain of custody to negate any possibility of tampering or substitution." (44 Ill. App. 3d 977, 984.)

(See also *People v. Woessner,* 132 Ill. App. 2d 58, 268 N.E.2d 508.) Under these circumstances, I feel the opportunity for tampering with the evidence could certainly be inferred.

While generally the admission of incompetent evidence must be objected to at the time of its tender into evidence (14A Ill. L. & Prac. *Criminal Law* §552 (1968)), the defense counsel's motion to withdraw was in substantial compliance with the general principle under the facts presented. The principal purpose of an objection in this situation is to advise the court of the incompetency of the proffered evidence. (*People v. Newman,* 261 Ill. 11, 103 N.E. 589.) While the evidence should have been objected to when offered as an exhibit, the error was brought to the court's attention immediately after the lunch recess, a time at which opportunity to cure the error still existed. In fact, the motion was made prior to the commencement of the defendant's case in chief so that any prejudice to the State would have been minimal. Certainly, the State could have re-opened its case and recalled Sheldon to explain the six-day break in the chain of possession of the drugs.

I acknowledge that the court's decision to strike evidence is discretionary (23A C.J.S. *Criminal Law* §1071 (1961); *Morella v. People,* 226 Ill. 388, 80 N.E. 903); however, I feel that under these facts the trial court abused that discretion. The totality of the evidence casts considerable doubt on the competence of the drugs; thus, it was patently unjust to deny the defendant's motion to strike the exhibit. I would therefore remand this cause for a new trial.

The State argues that since the tablets were adequately identified at trial, the chain of possession is immaterial. While identification is an alternate method of proof in such a situation (*People v. Sansone,* 42 Ill. App. 3d 512, 356 N.E.2d 101), the identification must be positive, especially in narcotics cases where frequent errors in identification occur. (*People v. Maurice,* 31 Ill. 2d 456, 202 N.E.2d 480.) Here the witnesses' testimony concentrated more upon the identification of the initialed paper inside the bag than upon the bag itself. The color of the tablets was described in varying ways and each witness admitted that he had not counted the tablets. These factors coupled with the opportunity for tampering with an unsealed bag rendered the witnesses' identification inconclusive.

Defendant also contends that she was improperly restricted in her

attempt to discover evidence which might have shown bias or prejudice on the part of Sheldon. During the lunch recess immediately following the close of the State's case, the defense counsel learned that Sheldon, the sole occurrence witness, may have been suspended from the police force and accused of rape. She had no particulars. Although the court granted defense counsel an opportunity to interview the witness, it limited the questioning to actual convictions of felonies. Counsel argued that the witness's suspension from the police force would tend to show bias or prejudice; however, the court apparently felt that only prior convictions could be used for impeachment purposes. I agree with defendant that she should have been granted an opportunity to ascertain Sheldon's current status with the police department as that status could establish bias or prejudice; yet, the discovery should have been allowed for another reason as well. Prior to defense counsel's knowledge of the suspension, the following colloquy occurred on direct examination:

"Q. State your name and department, please?

A. Dennis Shelton [sic] city of O'Fallon.

Q. And what is your occupation?

A. Police officer.

Q. I will ask you if you had occasion to be an agent or an officer loaned to the MEGSI unit?

A. Yes, sir, I did.

Q. And were you an officer of O'Fallon before you went to MEG?

A. Yes, sir.

Q. And served the tour of duty with the MEGSI and came back to O'Fallon?

A. Yes, sir."

On cross-examination, the following occurred:

"Q. How long have you been a police officer?

A. Since 1970

Q. Since 1970. Let's see, then you have been a police officer for six (6) years?

Q. Yes, maam."

Clearly, this testimony gave the jury the impression that the witness was still a police officer in good standing at the time of the trial. ABA Standards, Discovery and Procedure Before Trial §1.2, provides:

"In order to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, the adversary system, and national security."

Section 2.3 provides:

> "Except as is otherwise provided * * *, the prosecuting attorney shall, upon request of defense counsel, disclose and permit inspection, testing, copying and photographing of any relevant material and information regarding:
>
> * * *
>
> > (c) The relationship, if any, of specified persons to the prosecuting authority."

That the discovery was requested during the trial is of no consequence in view of the particular facts of the case.

It has been said that the purpose of discovery is broader than the mere acquisition of evidence—it encompasses the obtaining of information as well. (2 Wharton's Criminal Evidence §671 (1972 Supp.).) Here the requested information would have been relevant not only to expose bias on the witness's part, but also to impeach the implication in his direct testimony that he was currently a police officer. Since discovery was disallowed as to a possible suspension from the police force and accusation of rape against Sheldon, we do not know whether such actions had in fact been taken. Nonetheless, it is unthinkable that the defendant was not permitted to discover this information which was so potentially crucial to her case. In *People v. Strother,* 53 Ill. 2d 95, 290 N.E.2d 201, the supreme court held that examination during trial of the witness's arm to detect evidence that he was a narcotics addict should have been allowed. The court stated:

> "The accused has a right to cross-examine a witness concerning any matter which goes to explain, modify or discredit what he said on direct examination* * *. * * * In our judgment defense counsel was entitled to examine Bradley's arm for the presence of needle marks and to exhibit the same to the jury if so desired. It is our opinion that inasmuch as Bradley's credibility was the crucial factor in the determination of this case, there being insufficient independent evidence in the record to establish defendant's guilt, the trial court's rejection of defense counsel's request to examine the informant's arm was an abuse of discretion and prejudicial error. (*People v. Lewis* (1962), 25 Ill. 2d 396.)" (52 Ill. 2d 95, 99.)

Similarly, I find the trial court abused its discretion when it denied the discovery requested here. If the defendant's information was indeed accurate, I believe the State should have made this disclosure. Since Sheldon was the sole occurrence witness and since part of the defendant's theory of the case was that Sheldon had fabricated the alleged transaction after the defendant refused to go out with him, his testimony was further suspect. I believe that where, as here, the State's case rests upon the

testimony of one witness, great latitude should be afforded such matters as discovery for impeachment purposes.

Defendant next contends that it was error for the court to allow testimony concerning prior and future drug transactions between Sheldon and the defendant. While it may be, as the State argues, that evidence concerning prior drug transactions is admissible to establish the relationship between the two and to establish the ease with which Sheldon was able to purchase the drugs on the day in question (*People v. Cole,* 29 Ill. 2d 501, 194 N.E.2d 269), such reasoning cannot justify admission of the evidence concerning offers for future sale. Surely this would only serve to prejudice the defendant. In addition, the record fails to disclose that a limiting instruction was given on this point as was the case in *Cole.*

In light of the prejudicial errors committed at trial, I would remand this cause for a new trial.