THE OHIO & MISSISSIPPI RAILWAY COMPANY

v.

CYRENUS W. CULLISON, BY NEXT FRIEND, ETC.

*Master and Servant—Liability of Master for Assault by Servant—Railroad Conductor—Evidence—Res Gestæ—Narration—Practice—Conduct of Counsel—Instructions.*

In an action brought against a railroad company for the recovery of damages for an alleged assault upon, and forcible ejectment of the plaintiff from a passenger car by the conductor of the train in question, this court holds as erroneous the admission in evidence of certain testimony going to show what statements were made by the plaintiff after such ejectment, touching the same, likewise the refusal to instruct the jury to disregard certain improper remarks and statements made by counsel for the plaintiff during his address to the jury, and that the verdict for the plaintiff can not stand.

[Opinion filed September 11, 1891.]

APPEAL from the Circuit Court of Lawrence County; the Hon. WILLIAM C. JONES, Judge, presiding.

Messrs. POLLARD & WERNER, for appellant.

In the administration of justice, counsel are as much a part of the court as the judge who presides over the proceedings. The duties of the bench and bar differ in kind, not in purpose. The argument of a case is as much a part of the trial as the hearing of the evidence. Meredith v. People, 84 Ill. 480; see Brown v. Swineford, 44 Wis. 282, 293; and 18 C. L. J. 363.

This being so, what must be held of the argument of counsel set out in our abstract?

It has been said that a plaintiff's opening argument to a jury must indicate what the defendant is expected to meet, for he has a right to know what arguments are to be urged against him. Barden v. Briscoe, 36 Mich. 254.

From the sample furnished by this opening argument, defendant's counsel could not but have felt satisfied that any reply would only lead to a repetition of the objectionable "arguments" in the closing address.

The use of such open and palpable means to arouse the passions and blind the judgment of jurors, is a direct invasion of the right of a fair and impartial trial. Such remarks are of the "*ad captandum* observations which drop the poison of prejudice into the mind of an unsuspecting juror, and thus palsy and paralyze his best and most honorable efforts in the direction of a stern and inflexible performance of duty;" referred to by Speer, J., in his charge to the jury in the great case of U. S. v. Lancaster, recently tried in the Federal Court in Georgia; see 44 Fed. Rep. 896-931.

It is very doubtful whether there is any antidote for such poison. It is one thing to prevent the entry of an influence into the mind, quite another to dislodge it, say the court in Dougherty v. Welsh, 53 Conn. 558-560. At any rate, it is clearly the duty of the presiding judge to administer the antidote, if any exists. The most that counsel for the injured party can be called upon to do is to attract the attention of the judge to the misconduct. Henry v. Centralia & C. R. R. Co., 121 Ill. 264; E. J. & E. R. R. Co. v. Fletcher, 128 Ill. 620; Hennies v. Vogel, 87 Ill. 242.

Such intemperate expressions as "outlaw," "cut-throat,"

"murderous breath," etc., might be overlooked, considered in and of themselves, but when used in connection with such appeals as— "I warn him (opposing counsel) I have camped on his trial and intend to stay there until a big judgment is rendered against this company, which will teach them that the people have some rights which corporations are bound to respect;" and, "Gentlemen of the jury it is time for this over-bearing spirit of employes of corporations pervading this country to stop. It is a power that is beyond all control. It says 'I will do as I please. I will assault and humiliate you. You are only a farmer's boy and I will do as I please with you,'" etc.; and as that contained in the following startling and original peroration: "And now, gentlemen of the jury, render a verdict that will be an example to this man and others like him. A judgment that will give you and your families security that you will be safe when you want to travel. Let these great trains of cars come and go from the east and from the west and from the north and from the south, over the broad prairies and through tunnels and over bridges, but let them understand that you shall go unmolested wherever you want to. Don't let them meet you with a bludgeon whenever you want to enter a car, and crack you over the head with it. Render a judgment that will not only be for wrongs they have done, but that will make them responsible for wrongs to come."

Compare the foregoing language with the following comparatively tame remark which the Supreme Court of this State say "was culpably out of place, in violation of professional duty, and should meet a court's pointed rebuke," viz.: "For more than twenty years I have stood as a humble advocate of the people against the power of such monopolies as this." See C. & A. R. R. Co. v. Johnson, 116 Ill. 210.

We beg to refer this court to the views of the Appellate Court of the Third District of this State, as expressed in the case of C. & A. R. R. Co. v. Bragonier, 13 Ill. App. 467, and of that of the First District, expressed in Chase v. City of Chicago, 20 Ill. App. 274; L. S. & M. S. Ry. Co. v. May, 33 Ill. App. 366–370.

In the case of M. & O. R. R. Co. v. Davis, 130 Ill. 146, the Supreme Court makes the following citations which we think appropriate to the present discussion, viz.: From Knight v. Inhabitants of Freeport, 13 Mass. 218: " Too much care and precaution can not be used to preserve the purity of jury trials. The attempt to influence jurors in this case was grossly improper, and ought to be discountenanced. It is not necessary to show that the mind of the juror thus tampered with was influenced by this attempt. Perhaps it is not in his power to say whether he was influenced or not. If he was there was sufficient cause to set aside the verdict, and if not, and the party who gained the verdict has a good cause, he will still be entitled to a verdict upon another trial. We can not be too strict in guarding trials by jury from improper influence. This strictness is necessary to give due confidence to parties in the results of their causes; and every one ought to know that for any, even the least, intermeddling with jurors, a verdict will always be quickly set aside."

And from Cottle v. Cottle, 6 Greenl. 140, the following: " It is insisted that the juror was not in fact influenced, and that justice has been done between the parties. It may be so; but it may be useful to the party to learn that a good cause may be injured, but can not be promoted by conduct of this sort, and to the public generally, to know that it will be tolerated in no case whatever."

What the nature of the "improper influence" sought to be exerted, and whether secretly upon one juror, or brazenly upon the whole panel, is certainly immaterial. The Supreme Court in the case from which these citations are copied, say emphatically that "the jury box must be free from improper influence."

In a case above cited (33 Ill. App. 370), the court say: " It would be well for counsel in their addresses to juries, especially in that class of cases in which it is well understood that their clients have the ready sympathy of the jury, to confine their discussion to the evidence in the particular case, and avoid intemperate and extravagant statements of matters not pertinent and which are calculated to arouse the prejudice

and passion of jurors and lead to unjust results." And we would add that particularly should this be remembered when, as in the present case, there was no actual damage, and where the only substantial damages which could be allowed must have been in the nature of punitive damages, for the assessment of which a jury has no other guide than sound judgment and enlightened conscience.

Messrs. GEE & BARNES and JAMES S. PRITCHETT, for appellee. It can not be presumed that this jury acted differently or otherwise than they would had counsel not made the remarks. Unless this can fairly be perceived and the verdict is contrary to right, no attention ought to be paid to bickerings of counsel. There can be no reversal where the verdict of a jury is fully justified by the evidence. Garrity v. People, 107 Ill. 163; Baysinger v. People, 115 Ill. 419; C. & A. Ry. Co. v. Johnson, 116 Ill. 206; Spies v. People, 122 Ill. 1.

GREEN, J. This was a suit brought to recover damages for an alleged assault upon, and forcible ejectment of, appellee from appellant's passenger train by the conductor in charge thereof. The jury by their verdict found defendant guilty and assessed plaintiff's damages at $500. Defendant's motion for a new trial was overruled. Judgment was entered upon the verdict and defendant took this appeal. Two errors are well assigned and require the reversal of this judgment. The court erred in admitting the testimony of witnesses on behalf of plaintiff, detailing statements and complaints made by him after the time he was ejected from the train, touching the alleged assault. The evidence shows the distance to have been between 150 and 200 feet from the point plaintiff was ejected, or jumped from the train, to the depot platform where he made these declarations a few minutes afterward. Leech, witness for plaintiff, was asked: "Did you see him right after he got up and came back?" and answered, "Yes, within a few minutes;" and was then asked, " Tell the jury —don't use his language—but tell the jury and his honor, the Judge, what he complained of?" Objection was made to this question, and exception to overruling the objection, and wit-

ness answered : " He complained of being thrown off the train without any right, as he had money to pay his fare." Lantermann, another witness for plaintiff, after testifying he saw plaintiff on the platform when he returned there, was asked by plaintiff's counsel : " Now don't use his language, but just tell the jury what he cómplained of ? "

Like objection to this question and exception to overruling same was made, and witness answered : " He complained of being kicked off; that's about all I heard him complain of." Witness was then asked : " Did he say anything about where he was going?" and over like objection and exception was permitted to and did answer : " He said he was going to Olney." Bunn, another witness for plaintiff, was asked : " You need not use his language, but did he make any complaint ? " and over like objection and exception was permitted to and did answer : " When he got on the platform I was about ten feet from him and didn't hear what all he said; I am hard of hearing; I remember that somebody asked him where he was going and asked him if he had a ticket and asked him if he had money, and he said yes, and put his hand in his pocket and pulled out in the neighborhood of a dollar in change." These declarations of plaintiff were not a part of the *res gestæ*, but were made after the time the assault was alleged to have been committed and at a different place. They amounted to a mere narration of that which had already occurred—a past event. The test of the admissibility of hearsay evidence as *res gestæ*, is well and fairly stated in Chicago West Division Ry. Co. v. Becker, 128 Ill. 545, a case in point here. The true inquiry, according to all the authorities, is whether the declaration is a verbal act, illustrating, explaining or interpreting other parts of the transaction of which it is itself a part, or is merely a history, or part of a history, of a completed past affair.

In the one case it is competent, in the other it is not. It appears by the record that under the erroneous theory they were admissible as a part of the *res gestæ*. These declarations made by plaintiff, not verified by oath or subjected to the test of cross-examination, but merely repeated by witnesses,

were given the same potency and effect as evidence as could be claimed for the testimony of sworn witnesses properly examined and cross-examined. Moreover, this evidence, erroneously admitted, tended to prove material facts affirmed by plaintiff and controverted by defendant, viz.: that plaintiff was a passenger on defendant's train and was unlawfully kicked off by the conductor. Hence the error worked injury to defendant. The court also erred in permitting counsel for plaintiff, over the objections on behalf of defendant, to repeatedly use remarks and expressions in his address to the jury, not justified by the evidence and of a character quite offensive and vituperative, and erred in refusing to instruct the jury to disregard these statements of plaintiff's counsel as requested by counsel for defendant. We will not lengthen this opinion by reproducing the portions of said address alluded to. Suffice it to say the remarks were quite extended and very improper; they were not justified by the evidence, and were calculated to, and doubtless did, unduly excite the passions and prejudices of the jury against the defendant and thus prevented that which the law demands and every litigant is entitled to—a fair and impartial trial. For the errors indicated we reverse the judgment and remand the cause.

*Reversed and remanded.*