## Chicago Union Traction Company, et al., v. Leo Lowenrosen.

### Gen. No. 12,129.

1. Passenger—*what does not show non-status as.* The fact that a plaintiff claiming that he was a passenger made statements upon cross-examination which tended to show that he was not a passenger, does not establish his non-status as a passenger where there was ample evidence in the case without such statement to establish that he was in fact a passenger.

2. Recovery—*upon what, must be predicated.* The plaintiff must recover, if at all, upon his declaration; he cannot charge one species of negligence and recover upon proof of negligence of a different character.

3. Res gestæ—*what not part of.* A statement made by a companion of one claiming to have been a passenger upon a traction car after such car had traveled about a block, is not a part of the *res gestæ* but is only competent as tending to discredit the testimony of such companion.

4. Technical errors—*when will not reverse.* Technical errors are not ground for the reversal of a judgment which in the opinion of the Appellate Court does substantial justice between the parties.

5. Verdict—*when not excessive.* A verdict for $5,000 is not excessive where the evidence shows that the plaintiff was thrown from the car in question to the ground with such violence that he was rendered unconscious; that blood flowed from his eyes and mouth; that he was transformed thereby from a strong, well man in the prime of life, of good hearing and unruptured, to a sick man, prematurely old, incapacitated for pleasure, wholly deaf in one ear and partially deaf in the other, with an inguinal hernia so large that it necessarily interferes with his movements and cannot be reduced by manipulation.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. Edward F. Dunne, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed December 4, 1905.

**Statement by the Court.** Appellee recovered a judgment for $5,000 against appellants in an action on the case for personal injuries. The accident happened on West

Madison street, an east and west highway, near a cross street known as Hamlin avenue, in the city of Chicago. The West Chicago Street Railway Company at the time of the accident owned a double track street railway lying in Madison street, which was then and there operated by the Chicago Union Traction Company.

The first and third counts of the declaration alleged that appellee was a passenger, the second and fourth that he was in the act of stepping on the car for the purpose of becoming a passenger, when the accident happened. The negligence charged is in the management and control of the car, in causing the car to start and lurch violently forward, and in causing the car to start forward while the plaintiff was in the act of stepping into the car.

The evidence of the plantiff tended to prove that August 17, 1901, he left his home on Lake street and walked south to Madison street and Hamlin avenue, accompanied by his wife, his young daughter, his married daughter and her child, a babe in arms; that the married daughter was going to her home several miles east of Hamlin avenue; that she intended to take an east-bound Madison street car, and when Sangamon street was reached to transfer to a south-bound car; that the plaintiff was going east with his married daughter to attend a society meeting in a hall situate on the corner of Jefferson and Maxwell streets; that the mother and young girl, after seeing the others on the car, intended to go to a grocery store and from there to return to their home; that the time was about 8:30 P. M.; that the entire party crossed Madison street and stood on the south side of that street at the intersection of Hamlin avenue awaiting the coming of an east-bound car. That when the train came it consisted of a grip-car and two trailers, each of which was an open car with running boards at the sides and seats crosswise of the car, separated by a central aisle; that the mother and the young girl remained on or near the south sidewalk, while the married daughter and the plaintiff, he carrying the babe, stepped out to the rear car as the train stopped to discharge and to take on passen-

gers; that his daughter stepped into the car between the middle seats and the plaintiff, with the babe in his left arm, took hold of some part of the car with his right hand and stepped up on the running board and was in the act of handing the babe to its mother when the car started suddenly and thereby he was thrown to the ground and injured; that the plaintiff was then 43 years old, a strong, vigorous man, free from rupture and not deaf; that he was rendered unconscious by the fall, and was conveyed to his home in the police ambulance, where he was confined to his bed from four to seven weeks; that within a few days a rupture to the scrotum developed, which at the time of the trial was as large as a cocoanut; that he became almost wholly deaf in the right ear and in the left ear there was a loss of 25 per cent. of what the hearing should be; that the condition of the right ear is permanent, and the rupture cannot be cured without the performance of a major operation which might or might not effect a permanent cure; that he is not able to do continuous work and is prematurely old.

The evidence of the defendants tends to prove that appellee did not intend to become a passenger upon the car, but went to the car for the sole purpose of seeing his daughter and grandchild safely on it; that appellee and his daughter got into the car and reached the center aisle before the conductor of the rear car rang the bell and the car started slowly; that appellee jumped off the car after it started, and in so doing fell into the street; that the hernia was not produced by the fall, and that it could be cured by a major operation.

JOHN A. ROSE, ALBERT M. CROSS, and HENRY W. BRANT, for appellants; W. W. GURLEY, of counsel.

I. B. LIPSON, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

The contentions of appellants are: First, the court erred in refusing the peremptory instruction requested by the defendants; second, the court erred in giving plaintiff's first

and second instructions; and third, the damages are excessive.

The peremptory instruction is based upon the pleadings and the evidence. The declaration charged that the plaintiff was a passenger on said car, or was in the act of stepping on said car for the purpose of becoming a passenger. It is contended that the evidence showed he did not intend to become a passenger, but, at the time of the accident, had gone to the corner in question simply to put his daughter on the car, and was injured while handing her baby to her.

It is settled law that the plaintiff must recover, if at all, upon his declaration, and that he cannot charge one species of negligence and recover upon proof of negligence of a different character. C. & A. Ry. Co. v. Bell, 209 Ill., 25.

If the plaintiff was not a passenger, or did not intend to become a passenger, defendants did not owe him that high degree of care required from the common carrier for the protection of its passengers, but owed him the duty of ordinary care only; namely, to use ordinary care that the plaintiff was not injured by reason of the sudden starting of the car, or by reason of an omission to give the customary signals for the starting of the car.

The claim that the plaintiff was not a passenger is based upon a statement made by him in cross-examination. In his examination in chief he had testified that he was going to attend a meeting of the Western Star Order, of which he was recording secretary, at Broder's Hall. The following occurred in his cross-examination:

"Q. Isn't it a fact that you just simply went down there to help your daughter get on the car and get started home that night?

A. Yes.

MR. LIPSON: What is the answer?

THE COURT: Yes.

MR. LIPSON: I ask that the court put that question to the witness.

MR. BAILY: No, I object to it.

JUDGE NEELY: I object to it. The witness answered.
THE COURT: You can get him on the re-direct."

At the close of the cross-examination the court asked the plaintiff: "When you put your baby, your grandchild, into your daughter's arms, did you intend to take that car?"
A. "Yes, I was ready to go on the car. I was going to the meeting on that car, and my daughter was going to get off when she got to her home."

There is ample evidence in this record to justify the jury in finding that the plaintiff was a passenger in this car or was in the act of stepping on the car for the purpose of becoming a passenger at the time of the injury.

The conductor testified that after the car had run about a block he went to the daughter and collected her fare, and then looked around for the plaintiff, when she said, "The gentleman jumped off," or "He jumped off." This evidence is not *res gestœ*, nor was the statement made in the presence of the plaintiff. Its effect is to discredit the daughter, but it cannot be extended farther.

The plaintiff testifies: "When Mrs. Brooks got on the car was standing still. She took the baby from me. I held the baby on that hand, and I held with that hand to the car, and I was ready to go on the car from the first step and the car push and I fall down."

Mrs. Brooks says: "The car jerked and he fell back. He fell backwards and his head was west. I had the baby when he fell. The car jerked and I was on the car screaming."

Harry B. Gimlin testified: "He also had a little child and he was putting his foot on the place for him to get into the car, and as he was there the grip started all of a sudden, the lever opened, and threw him."

Opposed to this is the testimony of the two conductors and the motorman of this train, each of whom testifies that when they left Hamlin avenue the train started up in the usual way. It is to be noted that each of these witnesses declares he knew nothing of this accident until he reached the car

barns upon the return trip. It is not strange that in this regard the jury believed the evidence of the plaintiff and disbelieved that of the defendants.

The first instruction given at the request of the plaintiff reads as follows:

"1. If you believe from the evidence that the plaintiff got on the car in question for the purpose of riding on the said car and was ready, willing and able to pay his fare, then it was the duty of the defendant, Chicago Union Traction Company, to do all that human care, vigilance and foresight could reasonably do consistent with the character and mode of conveyance adopted and the practical prosecution of their business to prevent an accident to the plaintiff while he was riding upon the said car or going upon the same, and if you further believe from the evidence that the defendant, Chicago Union Traction Company, failed to use such care and diligence and that by reason thereof the plaintiff was injured as alleged in the plaintiff's declaration while the plaintiff was in the exercise of reasonable care for his own safety, then you should find the defendant, Chicago Union Traction Company, guilty."

In objecting to this instruction the defendants say it assumes that the plaintiff was a passenger or intended to become a passenger upon the car. As we have seen, there was ample evidence to justify the jury in so finding.

Again, they say it does not limit the right of recovery to the negligence charged in the declaration. We do not so read the instruction. It says, if the "defendant the Chicago Union Traction Company failed to use such care and diligence, and that by reason thereof the plaintiff was injured as alleged in the plaintiff's declaration," etc. The phrase "as alleged in the plaintiff's declaration" relates back to the use of diligence by that defendant as well as to the injury to the plaintiff. Any other interpretation is too technical for practical use. Further, by given instruction No. 11 the jury were instructed that unless the plaintiff was a passenger on the car, or was in the act of boarding or of stepping on the car for the purpose of becoming a passenger, he could

not recover. But admitting that this instruction is not clearly drawn, the propositions of law it contains are correct when applied to the facts of the case as found by the jury, and they were not misled thereby. From a careful examination of the record, we are convinced that in this case substantial justice has been done, and that a retrial would probably result in another verdict for the plaintiff. So believing, we cannot set aside the judgment for errors of a technical character which do not go to the substantial merits of the case. This common sense position is sustained by Wilson v. The People, 94 Ill., 299; C. & E. I. Ry. Co. v. Rung, 104 Ill., 641; Zimm v. The People, 111 Ill., 52; Beard v. Maxwell, 113 Ill., 442; Gore v. The People, 162 Ill., 259; and W. C. St. Ry. Co. v. Maday, 188 Ill., 310.

We find no reversible error in the second instruction given at the request of the plaintiff.

The question of the amount of damages in an injury case is primarily for the jury under the guidance of proper instructions. The evidence in this case justifies the statement that the plaintiff was thrown from the car to the ground with such violence that he was rendered unconscious, and blood flowed from his ears and mouth, and that he was transformed thereby from a strong, well man in the prime of life, of good hearing and unruptured, to a sick man, prematurely old, incapacitated for pleasure, wholly deaf in one ear and partially deaf in the other, with an inguinal hernia so large that it necessarily interferes with his movements, and cannot be reduced by manipulation. It is true that there is evidence given by distinguished experts to the effect that this hernia could not come from the accident. There is also abundant evidence to the contrary. Two witnesses testify that while the plaintiff lay upon the ground at the scene of the accident, partially unconscious, he drew up his legs and placed his hands upon his groin. Doctor Leviton, who examined the plaintiff within three days of the injury, found this hernia by digital examination, and advised the immediate use of a truss. Doctors Weber, Stettauer and Campbell, men of high rank in their profession, in answer to a

hypothetical question based upon the evidence, each stated that the fall from the car could have produced the hernia. The objection that the damages are excessive is not well taken.

Finding no reversible error in this record, we affirm the judgment of the Circuit Court.

*Affirmed.*