THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHESTER SCHABATKA *et al.,* Defendants-Appellants.

(No. 72-169;

Third District—April 17, 1974.

Robert H. Jones, of Peoria, for appellants.

Jay H. Janssen, Assistant State's Attorney, of Pekin, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendants Chester Schabatka and Norburn Dean were found guilty by a jury of burglary and arson. The Circuit Court of Tazewell County sentenced Dean to imprisonment for not less than 5 nor more than 10 years for burglary and not less than 5 nor more than 15 years for arson, sentences to be concurrent. Schabatka was sentenced to not less than 2 nor more than 5 years for burglary and for not less than 5 years nor more than 10 years for arson, sentences to be concurrent. Both defendants appeal contending that the jury was not properly instructed; that they were denied equal access to discoverable material and other

physical evidence; that they were denied the right to have the jury consider certain evidence; and that the record does not establish their guilt beyond a reasonable doubt.

On July 23, 1971, James Emmons and wife Ann, were buying a home at 115 Fifth Street, South Pekin, Illinois. They had occupied the house for about a year but on July 23 they were on vacation visiting a relative in Omaha, Nebraska. No one had been given permission to live in their home during their absence but they had asked Debbie Davison, a neighbor girl 15 years old, to watch the house and take care of their dog. The house contained an oil furnace and a gas stove on which pilot lights were burning. On learning of a fire in their home they returned and discovered the house "gutted" but "nothing missing." The contents and the house were insured and the full amount of insurance was paid by their insurance company. Neither knew either defendant and had no dealings with them.

At about ten o'clock on the night of July 23, 1971, Debbie Davison was at her home with her mother and sister. The Emmons home was about 100 feet away. Debbie heard glass breaking, looked out her window and saw figures of two men at the back door of the Emmons home. She did not see what they were doing; it was dark and they were standing up. One of the figures had on a white T-shirt and the other had dark clothing. One was tall and one comparatively short. After watching about 2 minutes she left the window and called the police. When Debbie returned to the window there were two explosions; she saw one person "fly out of the house" and the other one came running out. Both were on fire and they began rolling in the grass. It was not light enough for her to see the faces and she could not identify the men.

David Lee Lowery, a friend of defendants, was working the 4 o'clock to midnight shift at American Distillery in Pekin on July 23, 1971. At around 10 o'clock that night he received a note requesting he call the telephone number of defendant Schabatka. He called Schabatka at his home, checked out of work and drove to Schabatka's home where he found both defendants burned "pretty bad." When he first saw defendants, Schabatka was wearing a bathrobe, and Dean's clothing was mostly "burned off—he had not much of anything on—nothing that I can say what color." At this time Schabatka was conscious but Dean was in shock, "coming and going—not really conscious." Lowery administered first aid (he had had army training for burns in crash rescue). He telephoned Jim Clark, requesting assistance in transporting defendants to hospital, and, when Clark arrived, the defendants were placed in Lowery's car. He decided to take defendants to St. Francis Hospital in

Peoria rather than to the nearby Pekin hospital because his mother was employed at the St. Francis emergency room. At Creve Coeur the car was stopped for speeding by local police who called an ambulance and who then escorted the car until the ambulance was intercepted in East Peoria and defendants transferred to the ambulance for the remainder of the trip.

Larry Layer, a sergeant in the Sheriff's department who was on duty at the time of the fire, made plaster casts of footprints found in the area. He found burned clothing at the scene, a flashlight, a small pry bar and corn leaves containing blood stains. He went to St. Francis Hospital emergency room where he took both defendants' clothing (no T-shirt) and shoes and certain cotton swabs. As a result of what defendants told him he "had patrol cars check for a burned station wagon."

The blood on the corn leaves was type A. Defendant Schabatka had type A, but so do about 40% of the population. Scientific analysis disclosed that the fabric of clothing found at the scene, could not have originated from the clothing taken at the hospital, the soil removed from defendant's shoes "failed to reveal a sufficient number of areas of similarity to indicate a common source; no fingerprints were found on the flashlight and pry bar; and the casts of the footprints at the scene did not match with shoes of either defendant taken from the hospital."

An arson investigator inspected the Emmons home on August 12, 1971. He detected the odor of gasoline on carpet samples, concluded that the fire was started by an accelerant and that gasoline fumes could have been ignited by the pilot light on the gas stove.

James A. Flynn, a criminologist, scientifically analyzed the carpet samples, defendants' clothing and the cotton swabs all of which he stated contained gasoline vapors.

The first witness for the defendants, Wayne Werchez testified that he had a small used-car business and that in July 1971 he sold an old red Dodge or Plymouth station wagon to a Ralph Johnson for $50 or $75. Johnson was a "kind of hippie type fellow with long hair and whiskers."

Donald Barth testified that on July 25, 1971, he saw a red 1960 Dodge station wagon that had been badly burned. The tires and radiator were on it. The car was behind a slag pile off the traveled portion of a gravel road about a half mile south of LaMarsh Creek Road. He notified the sheriff's department.

Robert DuBois, a crime-scene technician went to the car on July 26, 1971. He photographed and took debris samples from the interior. The debris samples were negative as to the presence of any accelerant. When he saw the car, the front tires and the radiator were missing. There was

no battery in the car and there was no residue of any plastic or battery material having melted in the area.

William Bond testified that both defendants were working on Dean's house when he left them at 8:30 on evening of July 23, 1971.

Sylvia Armstrong testified that she saw defendants arrive at Tony Baker's tavern in Mapleton, Peoria County, at between 8:45 and 9. She saw them leave between 9 and 9:20 P.M. with a man about 30 to 35 years old who had long hair and was wearing glasses. Defendants were wearing pants and shirts but she didn't really pay that much attention. They were not in the tavern "too long."

Defendant Schabatka testified that about 8:30 he and Dean left Dean's house and drove 4 or 5 miles across the river to Tony Baker's tavern arriving at about 8:40. While there, this stranger, a hippie type with long hair asked Dean to help him get his car started. Defendants agreed to "give the guy a hand." They all left the tavern about 9:15 to 9:20 P.M. On the way to the car the guy said his name was Ralph Johnson. After driving about 5 minutes they came upon Ralph Johnson's car. After trying unsuccessfully to get the car started they determined it needed gas to be poured into the carburetor. In the wagon there was an outboard motor containing gas and an empty can. The outboard's gas was poured into the can. Dean then poured gas into the carburetor, shut the hood, came around the car, sat in the seat beside Schabatka and said "OK try that." Johnson stood right beside the driver. Both doors were open. Schabatka then tried to start it and the car exploded, flames shot from everywhere. He testified, "Well, I blowed out of the car and I was all on fire, completely on fire seemed like at the time." His clothes were on fire and he got the fire out and then he got Dean and drove home (about 5 miles). He did not know what became of Johnson as he never saw him again after the explosion. At home, "We took off the clothes what was left." He put on a bathrobe. At home his wife was too shaken to drive defendants to hospital so he called his buddy David Lowery. At the hospital when he talked to the police he was not in his right mind. He was burned from the waist down, had some burns on his arms and had a cut requiring stitches on one of his arms.

The defense contends initially that the jury was not properly instructed in that the court, over objection, gave I.P.I. Criminal No. 3.04 and refused defendants' tendered instruction 3, 4 and 11 which were not in I.P.I.

I.P.I. 3.04 reads, "Motive is that which prompts a person to act. The State is not required to prove a motive for the commission of the crimes charged."

■■■ Defendants concede that the cases cited by the Committee hold that motive is not an essential element of proof in a criminal case but seizes on the exception: "Accordingly, if the People adduce evidence tending to prove a motive and the prosecutor argues the circumstance of motive to the jury, this instruction should *not* be given." Defendants further concede that nothing was adduced in the evidence concerning motive, except inferentially, in the testimony of James Emmons that he did not know the defendants and had never had anything at all of any kind, character or nature to do with them. We do not agree that such evidence was designed to show motive for this arson and we do not believe that under the circumstances of this case such instruction constituted error.

Defendants tendered Instruction 3:

"Your personal opinions as to the facts not proven cannot properly be considered as the basis for your verdict. You may believe as men and women that certain facts exist, but as jurors you can only act on the evidence introduced upon the trial, and from that and that alone you must form your verdict, unaided, unassisted and uninfluenced by any opinions or presumptions not formed upon the evidence."

Instructions that are out of keeping with the general purposes endorsed by the supreme court in the publication of Illinois Pattern Jury Instructions because they are repetitious or otherwise inconsistent with those purposes, are not to be given even though they may be a correct statement of the law and though their use has been approved in the past. (*Bulleri v. Chicago Transit Authority*, 41 Ill.App.2d 95.) I.P.I. Criminal 1.01 was given and paragraph 3 contains a "very good statement of the law." *Eckels v. Hawkinson*, 138 Ill.App. 627, 633—4. See Comment to I.P.I. Civil 2d 1.01.

Defendants tendered Instruction 4:

"The Court further instructs the jury that in this case the defendants have made a defense of what, in law is called an alibi; that is, that at the time the offense charged in the Indictment is alleged to have been committed that the defendants were not at the place where the crime was committed but were elsewhere. And the Court instructs you that it is not necessary that the defendants prove their alibi beyond all reasonable doubt, but if, considering the evidence of alibi, together with all other evidence in the case you have any reasonable doubt of the defendants' guilt, then you should acquit them."

I.P.I. Criminal 2.03 and 3.02 were given. This court recently held that

it was not error to refuse to give an instruction on the subject of alibi. *People v. Hawkins*, 4 Ill.App.3d 471.

Defendants tendered Instruction 11:

> "In every criminal case, the accused have the right to advance any theory of their defense, but in order to be entitled to an acquittal the Defendants are never required to prove their theory of the defense beyond a reasonable doubt, nor even to the satisfaction of the jury. The burden is upon the People to establish their guilt beyond every reasonable doubt, and if, after considering the evidence introduced by the Defendants in connection with all the other evidence, the jury have a reasonable doubt of the Defendants' guilt, they cannot be convicted."

Again, I.P.I. Nos. 2.03, 3.02, 15.02, 14.06 were given and we find that the jury was adequately instructed on the burden of proof, the effect of circumstantial evidence, and the requirement of proof of defendant's guilt beyond a reasonable doubt. At defendants' request 2.03 was given in its entirety, the last paragraph provided:

> "You should not find the defendants guilty unless the facts and circumstances proved exclude every reasonable theory of innocence".

The defendant was not entitled to repetitious instructions. *People v. Richards*, 120 Ill.App.2d 313, 345.

Defendants next contend that they were denied equal access to discoverable material and other physical evidence.

On February 25, 1972, defendants each filed identical motions for discovery the pertinent paragraphs being "d. Any reports of experts * * *." and "g. Any and all tangible evidence which the State has in its possession and control * * *."

On March 12 in response the State furnished an Exhibit 3 (not abstracted), stated that the People were unaware of any other reports at that time but stated, "If any other reports of experts reach the files of the State prior to trial of this cause, copies of the reports will be forwarded to the defendants through their counsel." The State stated that photographs of a 1960 Dodge station wagon were in custody of Robert DuBois. Tangible items belonging to accused were listed and attached to Exhibit 3. The items and photographs were open to inspection by the defense.

On May 10, 1972, pursuant to a motion of the People stating that not all physical evidence sent to Illinois Crime Laboratory for analysis had been returned and analyzed, the court entered an agreed order for continuance to June 26, 1972. The order recited that defense counsel would

desire an opportunity to examine such physical evidence and any analytical reports and was signed and approved by defense counsel.

On the morning of trial the defendants' attorney stating that he had received the analytical report of debris from the car and feeling that there may have been favorable evidence demanded an opportunity to examine the burned automobile. The People denied ever having had the car in their possession or control. They did not impound it and had no present or prior knowledge of its whereabouts since July 26, 1971. It had been examined on July 26, 1971, by Robert DuBois of the Illinois Department of Law Enforcement at the slag-pile area off the road but never impounded. The State never intended to use the automobile as part of its case. Diligent good faith efforts had been made to locate the car. Defense counsel stated, "I'm satisfied that due to my request he communicated with the proper law officials as a result of which no one has any idea of the whereabouts of this automobile."

The defense has cited no cases and we are aware of none that would require a party who never had possession and control of an object to produce it. Supreme Court Rule 412 (Ill. Rev. Stat., ch. 110A, sec. 412) provides,

> "* * * the State shall, upon *written* motion of defense counsel, disclose to defense counsel the following material and information *within its* possession and control: * * *." (Emphasis supplied.)

Further, the Committee Comments say that the rule requires a specific request for disclosure because in many cases discovery may be neither necessary nor wanted and that, therefore, the choice of discovery or no discovery is left to the discretion of defense counsel rather than making it automatic.

The defendants in this case were fully aware that the burned automobile might be a factor in their case yet at no time did they specifically request an independent inspection of the automobile until the eve of trial, almost 1 year after the event.

■■ We do not believe that the failure to produce what was not available for production, in the absence of a deliberate suppression of evidence favorable to the defense, deprived the defendants of a fair trial.

When James A. Flynn (the criminologist who examined and analyzed items for the presence of gasoline vapors) was called to the stand, the defense made a motion to exclude his testimony on the ground that a copy of his report had not been furnished to the defense. The assistant State's Attorney claimed that he had long ago furnished a copy. Another copy had been given to the defense the previous evening. The report was short and could be read in 2 minutes. The trial judge denied the motion to suppress the testimony.

The order for continuance entered by the court on May 10, 1972, approved and signed by defense counsel recited "* * * and counsel for the defendants advising the Court that defense counsel would also desire an opportunity to examine such physical evidence and any analytical reports as to same * * *." It is evident that counsel had some knowledge prior to trial. There was no wilful concealment by the State.

Supreme Court Rule 415(g) states that "* * * the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances."

In the instant case the defense knew on March 14, 1972, that the State had the items of evidence and that they either had been or were going to be analyzed. Of course, the defendants should have been given a copy of the expert's report as soon as available, but by the same token, they cannot wait until the second day of trial and now be heard to cry unfair trial. *Cf. People v. Embry,* 12 Ill.App.3d 332, 335.

When David Lee Lowery testified he was asked if he had a conversation with the defendants at Schabatka's house on July 23, 1971. He replied that he had at around 10:30 P.M. When asked to relate what was said an objection was made by the State and sustained by the court. The defense made an offer of proof to the effect that Lowery would have said that Dean said, "My God, that fire, the car blew up."

In the same fashion Officer Layer was not allowed to relate what the defendants told him at about 1:45 A.M. in the St. Francis emergency room as to how they got burned.

■■ Defendants contend that the testimony should have been admitted as spontaneous or excited utterances. The requirements for admissibility under this exception are: (1) the occurrence of an event sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. *People v. Poland,* 22 Ill.2d 175; *People v. Parisie,* 5 Ill.App.3d 1009, 287 N.E.2d 310.

Statements made by an accused in a criminal case may be admitted as spontaneous declarations provided the necessary tests are met. *People v. McLaughlin,* 337 Ill. 259.

Requirement 3 would appear to have been met in the instant case. Was there then absence of time to fabricate? Was the statement spontaneous?

The rule does not give any premise test as to how much time must intervene. Nor would it be possible to establish any such precise test. At any rate the tendency is to permit very little time to elapse before it will be held that the declaration is not spontaneous.

It also seems futile to attempt to put some limit on the distance the

declarant has travelled before his declaration lacks the necessary spontaneity. Nevertheless, if he has travelled from one geographic spot to another since the event, it is usually held that such travel has deprived his declaration of spontaneity. Hunter, "Trial Handbook for Illinois Lawyers" (4th ed.) sec. 66.20; *Chicago Union Traction Co. v. Lowenrosen*, 125 Ill.App. 194, *aff'd*, 222 Ill. 506; *Ohio & M. R. Co. v. Cullison*, 40 Ill.App. 67; *People v. Willson*, 401 Ill. 68.

Held, not to be spontaneous when the declarant has been removed to the hospital (*Sullivan v. Henry Guth & Co.*, 148 Ill.App. 538), or otherwise removed from the scene of an accident (*Levy v. Morand Brothers*, 185 Ill.App. 266).

■■ Each case must be decided on its own facts and the trial court is clothed with a reasonable degree of latitude. If the trial court does not abuse its discretion in its determination of admissibility, the ruling will not be reversed on appeal. (*Turnbull v. Porter*, 55 Ill.App.2d 374.) The statements herein were not so intimately connected with the event as to indicate that they were made without premeditation or with no purpose of exculpation. The trial court properly excluded the objectionable testimony.

The defendants' last contention is that the evidence does not establish their guilt beyond a reasonable doubt. They first point to a discrepancy between police officer's report and Debbie Davison's testimony. The report stated that she had told the police that one of the subjects had a white T-shirt and was medium height and slender build and she could not give any description of the other. They cite cases such as *People v. Bennett*, 9 Ill.App.3d 1021, which stand for the proposition that, "Where the identification of a defendant is vague, doubtful and uncertain, the prosecution has not sustained its burden of proof and the conviction must be reversed."

■ It is well established in Illinois that minor omissions or discrepancies in description do not necessarily affect the validity of a description although they may affect the weight to be given the evidence. (*People v. Bennett, supra.*) The description by Miss Davison of the crime was not intended to be an eye-witness identification of defendants; in fact, she stated she could not identify the men. Under the circumstances, the point raised by defendants as bearing on the question of identification does not in fact, do so. It bears only on the credibility of Miss Davison as a witness.

Defendants further argue that the evidence which showed that the defendants had been badly burned somewhere, by some agency, under some circumstances at sometime around 10 on the night of July 23, 1971,

though of probative value, cannot substitute for proof and that probabilities are not enough to convict.

It is true that the evidence against the defendants is mostly circumstantial, but the law makes no distinction between direct and circumstantial evidence which have the same legal weight and effect. (*People v. Robinson*, 14 Ill.2d 325, 331.) It has been held many times that circumstantial evidence which produces a reasonable and moral certainty that the accused committed the crime is sufficient to justify a conviction. (*People v. Schulewitz*, 87 Ill.App.2d 331, 337.) The principle is well settled that the guilt of defendant may be established entirely by circumstantial evidence and it is " ' * * * necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. * * * '." (*People v. Marino*, 44 Ill.2d 562.) Application of these principles to the instant case leads convincingly to the conclusion that guilt has been proven beyond reasonable doubt.

The judgment of the Circuit Court of Tazewell County is affirmed.

Judgment affirmed.

SCOTT, P. J., and STOUDER, J., concur.