THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY LEE ROBERTSON, Defendant-Appellant.

Third District   No. 75-282

Opinion filed November 5, 1976.

Robert Agostinelli and Mary Robinson, both of State Appellate Defender's Office, of Ottawa, for appellant.

Donald C. Woolsey, State's Attorney, of Galesburg (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Terry Robertson appeals from his conviction for the murder of 22-year-old Vicki Jo Lane for which he was sentenced to a term of not less than 30 or more than 90 years in prison.

Briefly summarized, the testimony at the trial before a jury showed that defendant visited his estranged wife at her parents' home in Victoria, Illinois, during the morning of September 23, 1974, and then took his 8-month-old son back to Galesburg. Defendant wanted to keep his son, and in the afternoon he went to Abingdon with Joni Klassen, the wife of a friend, to see if Mrs. Klassen's sister would babysit for him. On the return trip to Galesburg, at about 7 p.m., defendant ran out of gas on Route 41, south of Galesburg. Defendant and Mrs. Klassen started walking along the highway accompanied by four small children (defendant's 8-month-

old son, Joni's 23-day-old daughter and her 1-year-old daughter, and Joni's 3-year-old niece). Miss Lane was returning to Galesburg from her grandmother's home and stopped to help. She took the group to the Klassen residence at the Salvation Army building in Galesburg, stopping first at the restaurant where she worked to tell her employer that she would be late because she was helping some hitchhiker who had run out of gas.

Shortly after 8 p.m. Miss Lane was discovered lying beside her car on a country road east of Galesburg. She told three different passersby who stopped that she had been stabbed by a man, a hitchhiker, whom she had tried to help. She made similar statements a short time later to an ambulance attendant. Later that night Miss Lane died at the hospital where she was being treated for six stab wounds, one of which had punctured both the outer and inner walls of her heart.

Investigating sheriff's deputies found defendant's abandoned pickup truck and traced him to the Salvation Army building where he was arrested about 1:20 a.m. Defendant, testifying in his own behalf, denied killing Miss Lane and said he had played pool and pinball for two or three hours that evening.

Physical evidence introduced at trial included defendant's fingerprints lifted from the victim's car and from sunglasses identical to a pair seen by Mrs. Klassen on the dash of the victim's car after defendant got out, and found in the Salvation Army restroom following defendant's arrest. An empty paint-thinner can resembling a gasoline can, was found in Miss Lane's car and was like some cans stored at the Salvation Army building. The murder weapon was never found, but there was testimony that defendant had a knife a few days before the killing.

Three men currently serving sentences for other crimes testified to various occasions when defendant admitted killing Miss Lane while he was in jail waiting trial. Defendant was 20 years old at the time of trial. Additional facts will be supplied as necessary to discussion of the five issues raised on appeal, which are: (1) the admission into evidence of four spontaneous declarations made by the victim before she died; (2) admission into evidence of defendant's prior inconsistent statement for impeachment; (3) refusal to give an involuntary manslaughter instruction; (4) improper remarks in the prosecutor's final closing argument; (5) imposition of a minimum sentence greater than the statutory minimum. We affirm both the conviction and the sentence.

1. *Spontaneous Declarations*

Defendant contends that statements made by Miss Lane after she was mortally wounded were inadmissible as hearsay evidence and did not qualify as spontaneous declarations so as to be exempt from the rule

against hearsay. Both the State and defendant agree that Miss Lane did not realize that death was imminent and thus that these statements were not within the "dying declaration" exception.

According to the record, Mr. and Mrs. Frame came upon the scene about five minutes after Miss Lane was stabbed. Miss Lane said to them, "That man stabbed me. Please help me. Don't leave me. I can't move." The Frames told her they would go call an ambulance and the police and then come back. They drove a few miles to a farm house where they notified authorities, and then they returned to the scene. After the Frames left, Dawn Patty stopped, and, according to her testimony, Miss Lane screamed for help, saying, "Help, someone stabbed me. I was only trying to help him and he stabbed me." Miss Patty got out of her car and examined the wounds. Miss Lane tried to show which way her assailant had gone, but she would point and say, "He ran this way" and then she would say the other way. Miss Patty explained that she couldn't help by herself, but she would get help and come back. As Miss Patty was backing her car away from the scene, two young men driving a jeep stopped. Miss Lane first said, "Help me. Help me. Please help me. Don't leave me." Then she said, "I have been stabbed in the front and in the back." She also told them, "It was a hitchhiker; a man, a woman, a twenty-three month-old baby, and a child."

Miss Patty came back, and the men placed Miss Lane in the back seat of Miss Patty's car. The Frames also returned, and explained that an ambulance was on the way. It was decided to take Miss Lane to meet the ambulance with the other cars following.

Shortly after 8:30 p.m. they met the ambulance. The medical attendant, Sorenberger, examined Miss Lane in the Patty car and administered first aid for 15 or 20 minutes before moving her to the ambulance. During his examination, Miss Lane was in pain and complained of no feeling in her legs. She told Sorenberger she had picked up a hitchhiker and was trying to help "them." She said she was stabbed with a knife, and, when asked which direction her attacker had gone, her only response was, "He would let me go once we got to Victoria." She also mentioned "children" several times. According to Sorenberger, Miss Lane started to go into shock during the last quarter of his examination.

Defendant contends that sufficient time had elapsed after the stabbing for Miss Lane to have had time to reflect and fabricate a story thus destroying the spontaneity of her utterances. Defendant cites *People v. Jackson* (1956), 9 Ill. 2d 484, 138 N.E.2d 528, and *People v. Carter* (1st Dist. 1976), 41 Ill. App. 3d 425, 353 N.E.2d 260, in support of his position. In *Jackson*, the victim's statements were excluded because they were made one hour after the crime, and in *Carter*, exculpatory statements made by the defendant two to eight minutes after a fatal shot was fired

were excluded. Neither case is controlling here because of the different factual situation.

■■ Three factors are necessary to bring Miss Lane's statements within the spontaneous declaration exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) Both the first and third factors were present in the case before us, and the only disputed question is whether the victim had time to fabricate. The principle involved was best explained in *People v. Damen* (1963), 28 Ill. 2d 464, 471, 193 N.E.2d 25, 29, as follows:

" 'A spontaneous exclamation may be defined as a statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him. The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him.' "

■■ Neither the time which has elapsed nor the distance which the declarant has traveled from the scene of the crime is controlling although both must be considered in determining whether a declaration has the necessary spontaneity. *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804; *People v. Parisie* (4th Dist. 1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310.

The first three statements made by Miss Lane were made within a period of 5 to 18 minutes after the attack and were made at the scene of the crime. In each case she was alone, paralyzed and bleeding, on a dark country road, and she was attempting to obtain help from passersby who stopped to see what had happened. Her assailant had just fled the scene. There can be no doubt that these statements were admissible as spontaneous declarations.

Defendant argues that the statements made to the ambulance attendant are particularly suspect because they were made 30 to 45 minutes after the stabbing and after she had been transported a few miles. Furthermore,

she had begun to receive medical attention and was answering questions put to her by the attendant. Sorenberger testified that he asked her what had happened, what weapon was used, and which way the man had gone. He also testified that she was in pain and beginning to go into shock.

■■ We believe it is clear from the evidence that Miss Lane was not in a condition to manufacture and narrate an untrue version of the attack. She had received no medical treatment other than a few bandages. Her physical condition was deteriorating, and some of her statements were not responsive to the questions asked. Furthermore, unlike cases where the victim has been removed to the hospital and makes a statement several hours after the crime (*e.g.*, *People v. Parisie* (4th Dist. 1972), 5 Ill. App. 3d 1009, 1031, 287 N.E.2d 310, 323; *People v. Schabatka* (3d Dist. 1974), 18 Ill. App. 3d 635, 644, 310 N.E.2d 192, 196, *cert. denied*, 420 U.S. 928, 43 L. Ed. 2d 400, 95 S. Ct. 1128), the distance here in terms of time and place were so minimal, under the circumstances, that the victim lacked sufficient opportunity for reflection and invention. These declarations obviously sprang from the shock of the event and not from conscious deliberation or calculation. Considering the gravity of her wounds, the violence of the attack, and the frightening ordeal she had just endured, we conclude that it was properly within the discretion of the trial court to admit the victim's statement to Sorenberger.

### 2. *Prior Inconsistent Statement*

■■ Defendant claims that the trial court erred in allowing improper impeachment of defendant by a prior inconsistent statement because the State failed to lay a proper foundation for Deputy Shearer's rebuttal testimony. However, according to the record before us, defendant did not object either to the foundation or to Deputy Shearer's testimony. The trial court had no opportunity to rule on the propriety of the impeaching evidence, and defendant has thus waived any objection. *People v. Sanders* (1974), 56 Ill. 2d 241, 306 N.E.2d 865, *cert. denied*, 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3178.

### 3. *Involuntary Manslaughter Instruction*

■■ Defendant argues that the involuntary manslaughter instruction he tendered should have been given because the evidence was sufficient to support a theory that he acted recklessly rather than with an intent to kill. Cited in support of this argument is, first, the fact that five cuts were superficial and only one was fatal, and, second, the testimony of two fellow prisoners who said they heard defendant say, "I didn't mean to kill her," and, "It was an accident."

Contrary to defendant's interpretation of the physical evidence, we believe the six stab wounds are themselves enough to negate any possibility that defendant acted recklessly or unintentionally. See *People*

*v. Metts* (2d Dist. 1975), 30 Ill. App. 3d 868, 334 N.E.2d 277.

### 4. *Closing Argument*

■■ The next error assigned is a statement by the prosecutor in rebuttal during closing arguments:

> "Now you said that you would consider the evidence, and well and truly consider the evidence, that this trial Judge, in his experience, allowed into this case. He most certainly, in spite of counsel's realization it was so important and in spite of his vociferous attempts to keep it out, he never turned and [*sic*] eyelid and allowed the statements by the decedent into this case—"

The trial court sustained defendant's objection that this was improper comment on the trial judge's demeanor, and the State's Attorney apologized, but continued, "[Y]ou know its true, there was a quick, unequivocal rule each time an objection was made."

Defendant relies upon *People v. Bates* (3d Dist. 1975), 26 Ill. App. 3d 306, 325 N.E.2d 123, where the State's reference to a pretrial ruling by a judge other than the trial judge, on the admissibility of lineup identification was held improper.

The State contends that the prosecutor's comments were provoked by the earlier defense argument:

> "I would ask you, ladies and gentlemen, to consider the testimony that was allowed into the record in the matter of hearsay testimony by Vicki Jo Lane, the decedent. I would ask you, first of all, to recognize the difficulty of hearsay. I believe the Judge even mentioned on voir dire examination, try to put this hearsay out of your mind that you have read in the newspaper. You can't form an opinion on this type of uncorroborated statement which is made outside of Court with no opportunity to cross examine. So bearing that in mind, bearing the slight weight to be given, if any, to any hearsay statements just because they are made outside of Court and there is no opportunity to cross examine on them."

Thus, by reminding the jurors that on voir dire the judge had told them to put hearsay evidence out of their minds, the defense argued that they should give slight weight, if any, to the victim's statements. We believe that defendant's argument invited the prosecutor's response, and that, accordingly, defendant cannot now claim error. *People v. Weisberg* (1947), 396 Ill. 412, 71 N.E.2d 671, *cert. denied*, 331 U.S. 826, 91 L. Ed. 1842, 67 S. Ct. 1318; *People v. Bolton* (3d Dist. 1976), 35 Ill. App. 3d 965, 343 N.E.2d 190.

We note that this was a lengthy, warmly contested trial, and attorneys for both sides zealously argued their case. After carefully reviewing the record, and giving particular attention to the cautionary instructions given to the jury, including IPI—Criminal Nos. 1.01 and 1.03, we find any error

occurring in the course of final argument was not so prejudicial as to deprive defendant of a fair trial.

5. *Sentence*

Defendant's final contention concerns his sentence of not less than 30 or more than 90 years in the penitentiary. He argues that there are no aggravating factors to justify a minimum sentence greater than the minimum term of 14 years provided in the Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(1)). Defendant points to his youthfulness (he was 19 years old at the time of the crime), the absence of prior felony convictions, and his unstable family background as mitigating factors to be considered. However, these factors must be balanced against the vicious and senseless nature of this murder of a young woman whose only contact with defendant was that of a "Good Samaritan."

■■ The trial court is in a much better position to determine the appropriate sentence than is a reviewing court, and we will not substitute our judgment for that of the trial court unless it is apparent that the court abused its discretion. (*People v. Thomas* (3d Dist. 1976), 38 Ill. App. 3d 689, 348 N.E.2d 285.) We find no reason to disturb the sentence in this case.

Accordingly, the judgment of conviction of the Circuit Court of Knox County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.