THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE LEE NEWBURY, Defendant-Appellant.

(No. 73-230; )

Second District—September 9, 1974.

George Pease, Public Defender, of Waukegan (Michael J. Boyd, Assistant Public Defender, of counsel), for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

On August 1, 1969, defendant was convicted of the offense of murder and upon the recommendation of the jury sentenced to death. He appealed to the Illinois Supreme Court which affirmed his conviction but remanded the case to the Circuit Court of Lake County with directions to conduct a new hearing in aggravation and mitigation and to re-sentence the defendant to a sentence other than death. *People v. Newbury* (1972), 53 Ill.2d 228.

On March 21, 1973, the defendant was re-sentenced to a minimum term of 50 years and a maximum term of 150 years imprisonment. He appeals from this judgment, contending that the court committed reversible error in not ordering a fitness hearing on its own motion prior to re-sentencing; and, alternatively, that the sentence is excessive and should be reduced.

Defendant's trial counsel, the public defender, did not request a hearing to determine defendant's fitness to be sentenced prior to the re-sentencing judgment entered below. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(a), (b).) But he contends that the court on its own motion should have ordered the hearing in the particular circumstances of the case.

Defendant was found competent to stand trial in 1969. Defendant claims, however, that the trial court was in error in allegedly relying upon 3-year-old psychiatric reports as a basis for not questioning the defendant's fitness at the time of re-sentencing. Defendant relies on language quoted in *Furman v. Georgia* (1972), 408 U.S. 238, 288, 33 L.Ed.2d 346, 377-378, 92 S.Ct. 2726, 2751-2752, to the effect that awaiting execution in death row amounts to psychological torture which may lead to the onset of insanity. He reasons that this circumstance, coupled with what he characterizes as "apparent border-line insanity" at the time of his original trial, provided a clear basis for questioning defendant's fitness to be re-sentenced.

The court denied defendant's petition to have three psychiatrists testify prior to re-sentencing, but did permit defendant to be examined by Dr. Millett, a psychiatrist, who had testified at the original trial that defendant was psychotic. Subsequently, defendant's counsel explained to the court that although he questioned defendant's fitness, the defendant had explicitly instructed him not to request a fitness hearing. For the same

reason, counsel stated, that he did not introduce the report of Dr. Millett's examination in the re-sentencing hearing. .

■■ The circumstances that a defendant may possess a sociopathic personality and suffer from psychological and social disturbances, without more, are not sufficient to raise a bona fide doubt as to competency or fitness. See *People v. McElroy* (1970), 125 Ill.App.2d 237, 243.

Here, the defendant, in 1969, was found competent to stand trial. There was no testimony introduced in the re-sentencing hearing to support defendant's present contention that he was unfit to be re-sentenced. There was no evidence, except for the fact of incarceration for a 3½-year period under a sentence of death, standing alone, that would place defendant's fitness between the time of the original finding of competency and the re-sentencing hearing in question. The trial court had ample opportunity to observe the defendant at the re-sentencing hearing. The court stated that he was unimpressed with what he considered obvious tactics by defendant to convince the court that he was now unfit, and concluded that he had "no qualms about the defendant's mental fitness." On the record before us we are not justified in interfering with the court's exercise of discretion.

The defendant's alternative claim that the sentence of 50-150 years imprisonment is excessive is not persuasive. Defendant argues that he had led an exemplary life prior to committing this offense; was well educated, moderately religious, and had a seemingly bright future as a teacher. The defendant, however, murdered his fiancee under particularly horrible circumstances with no evidence which would tend to exculpate him aside from his unsuccessful defense of insanity at the original trial. See *People v. Newbury* (1972), 53 Ill.2d 228, 237.

■■ The defendant refers to the Illinois Constitution, article 1, section 11, which provides that all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. But the purpose of restoration is not to be given greater consideration than the seriousness of the offense in determining the penalty. *People ex rel. Ward v. Moran* (1973), 54 Ill.2d 552, 556-7.

■■ The penalty imposed upon re-sentencing did not violate the spirit and purpose of the law and it was within the limits prescribed by the legislature. (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4); *People v. Taylor* (1965), 33 Ill.2d 417, 424.) We therefore affirm the re-sentencing judgment.

Affirmed.

T. MORAN, P. J., and RECHENMACHER, J., concur.