THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WALTERINE METTS, Defendant-Appellant.

(No. 74-303;

Second District (1st Division)—August 8, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Edward N. Morris and Christine M. Drucker, both of Illinois State's Attorneys Association, of counsel) for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Walterine Metts, was indicted for murder and voluntary manslaughter. She was convicted of voluntary manslaughter after a jury trial and sentenced to 4-12 years in the penitentiary. Defendant appeals, contending that the trial court erred in refusing her request that the jury be instructed concerning the offense of involuntary manslaughter. In the alternative she claims that the court erred in refusing probation and in imposing an excessive sentence.

The victim, Sally Leigh, was an employee of the liquor store operated by the defendant's estranged husband Prince Metts but jointly owned by defendant and her husband. On the day preceding the offense and after her husband had not appeared at a meeting in the State's Attorney's office to discuss child-support payments, defendant went to the store and took $80 from the register and placed it in her purse. Prince Metts forcibly took the purse away from her, and she threw bottles at him. He then pulled a gun. Defendant left, saying that she would return for what was hers. The next evening, July 14, 1973, defendant called the store and was informed that her husband was not there. She told the employee who had answered the phone that she was coming to the store. In her trial testimony defendant said her intention was to purchase liquor for her sister and herself.

Defendant testified that before she left her sister's home after the call, she finished eating and fed her baby. She then took a gun which belonged to her sister, and, before driving to the store, placed the gun

in her bra. She said that she took the gun because her husband had pulled a gun on her the day before, but that she did not check to see whether the gun was loaded.

Defendant testified that she arrived at the store approximately 40 minutes after her call. She said she saw her husband's car in the parking lot. Sally Leigh together with Jo Ann Conway and Audrey Palmer, two other employees, were in the store. According to defendant no one said anything to her until she got to the service counter when Sally Leigh stepped in her way and asked her what she wanted. Defendant testified that she told Sally she would get what she wanted. There was a scuffle and defendant said she went down on the floor but did not reach for her gun. The scuffle ensued for several minutes before the other girls separated the defendant and the victim and held the defendant's arms. Defendant testified that she stopped struggling and said she would leave. However, Sally Leigh said "no" and continued to hold her. She and Sally started scuffling again and Sally was trying to get the gun from defendant's bra. Defendant said she was afraid of the bigger woman and was afraid the gun would go off. She said that she ended up with the gun in her hand face-to-face with Sally Leigh.

According to defendant's testimony they scuffled again. Sally Leigh ended up behind her and the gun went off as it was pointed at the floor. She did not know Sally Leigh had been shot, she said, and they continued to struggle. Sally Leigh was choking her and finally let her go after defendant repeatedly told Sally Leigh that she would leave.

Defendant testified that Sally Leigh pushed her as she let her go. Defendant said she then went for her purse, intending to leave, but that before she could pick it up she saw Sally charging at her with a broom. Defendant testified that she remembered saying, "Sally, don't * * *" and further testified: "I just pointed and fired."

There was testimony that the first shot struck Sally Leigh in the head above the left eyebrow but did not penetrate the skull and was not the cause of death. Audrey Palmer testified that she saw the gun in defendant's right hand after it was fired the first time. Jo Ann Conway testified that immediately prior to the gun being fired she heard the defendant say, "If you don't turn me loose, I'll kill you." She also said that the defendant's right arm was free with the gun in her hand although Sally had her arms around the defendant's neck. Jo Ann Conway and Audrey Palmer testified that they left the store after the first shot was fired. When they returned to the store after calling the police they found Sally Leigh lying on the floor face down with a broom underneath her and the defendant was speaking on the telephone.

The police officer who arrived on the scene testified that the defendant handed the gun to him and, after being informed of her *Miranda* rights, she said, "I told her to get back, but she tore my blouse, grabbed me, came after me with the broom, and I shot her."

The expert testimony established that the second shot fired was the sole cause of the death.

Defendant argues that the facts are consistent with a theory of involuntary manslaughter as involving reckless rather than intentional acts. She points to her testimony that she had not checked the gun to determine whether it was loaded; that after the shooting the police found only two shells in the cylinder and that those were next to each other; that the gun was pointed at the ground when it went off the first time; and that she was not angry when she fired the gun the second time but only wanted to leave the store. She contends that this was, therefore, evidence on which the jury could have reached a verdict of involuntary manslaughter, and that it was prejudicial error to refuse her tendered instruction defining the lesser offense.

The State responds that the defendant's testimony that she pointed the gun at her victim and pulled the trigger precludes any claim that her conduct was reckless rather than intentional.

We have recently stated the applicable law in *People v. Boisvert* (1975), 27 Ill.App.3d 35, 40-41, 325 N.E.2d 644, 648:

> "The rule is well established that if there is some evidence in the record which, if believed by a jury, would reduce the crime to involuntary manslaughter, defendant has a right to an instruction defining the lesser included offense. (*People v. Joyner* (1972), 50 Ill.2d 302, 306; *People v. Taylor* (1967), 36 Ill.2d 483, 489; *People v. Latimer* (1966), 35 Ill.2d 178, 182.) A defendant is entitled to the benefit of any defense shown by the entire evidence; and the court does not weigh the evidence in making the determination. (*People v. Khamis* (1951), 411 Ill. 46, 53.) Thus, even if the evidence is conflicting, and even if the defendant's testimony is impeached, a defendant may be entitled to the instruction. See *People v. Boothe* (1972), 7 Ill.App.3d 401, 403."

■■ We conclude that there was no evidence to justify the submission of the involuntary manslaughter instruction in this case. The evidence establishes without contradiction that it was the second shot which killed the victim. The circumstances surrounding that shot give no support to any possible claim that the shooting was not an intentional act. Defendant admitted that she pointed the gun at the victim, and that she intended to pull the trigger. Any doubt as to the fact that she knew the

gun was loaded is erased by the circumstance that the gun discharged the first time.

The defendant's testimony that she was not angry at Sally Leigh and her argument that she did not intend to kill her does not provide a sufficient basis for an instruction on involuntary manslaughter. *People v. Cannon* (1971), 49 Ill.2d 162, 166.

In *Cannon,* the defendant drew a gun and shot three or four times into a group of boys killing two of them. He argued that because he did not intend to harm anyone his conduct was arguably reckless rather than intentional. The court rejected the argument stating that the fact that Cannon intended to fire the gun and did in fact point it and shoot in the decedents' general direction evidenced an act done voluntarily and willfully and was sufficient proof of the intent requisite to constitute the offense of murder. Here, of course, the jury, although instructed as to both murder and voluntary manslaughter, chose to find defendant guilty of the lesser offense of voluntary manslaughter in accordance with the instructions given, which included the theory of self-defense. But the evidence would not have supported a conviction of a reckless homicide. See also *People v. Boisvert* (1975), 27 Ill.App.3d 35, 42, 325 N.E.2d 644, 649.

We do not retreat from the position which we took in *People v. Boisvert* that "where there is any evidence fairly tending to bear upon the issue of that offense even though the evidence may be weak, insufficient, inconsistent or of doubtful credibility," or even when there is "no direct testimony that could establish a lesser included offense but where the jury could fairly infer that the lesser offense had been committed," the trial court should give the instruction on the lesser included offense when requested. (27 Ill.App.3d 35, 42-43.) Nevertheless, under the circumstances of this case there was no evidence direct or indirect which could establish the lesser included offense and it was, therefore, not error to refuse the instruction.

■■ Defendant next contends that the court erred in denying probation since the presentence report showed that she was a good person, a devoted mother with no past criminal record, motivated to improve herself and unlikely to repeat antisocial behavior. Defendant argues that the trial judge, in fact, recognized these conclusions but in effect was ruling that voluntary manslaughter was a nonprobationable offense. She argues that *People ex rel. Ward v. Moran* (1973), 54 Ill.2d 552, holding that the appellate court had no authority to reduce a penitentiary sentence to probation, is inapplicable to cases arising under the Unified Code of Corrections which now defines probation as a "sentence" (Ill. Rev. Stat. 1973,

ch. 38, par. 1005—5—3).[1] We need not decide whether we have the authority to reduce a prison sentence to probation for under the circumstances of this case we, in any event, would not interfere with the exercise of the court's discretion. The trial court recognized that, although defendant would otherwise be eligible for probation, the seriousness of the offense required a more severe punishment. The purpose of restoration of a defendant (Ill. Const., art. 1, § 11) is not to be given greater consideration than the seriousness of the offense in determining the penalty. (*People ex rel. Ward v. Moran* (1973), 54 Ill.2d 552, 556-57; *People v. Newbury* (1974), 22 Ill.App.3d 1, 3.) Probation may properly be denied within the discretion of the trial court even though defendant has no prior record. See *People v. Miller* (1971), 131 Ill.App.2d 697, 701; *People v. Taliaferro* (1970), 130 Ill.App.2d 677, 678-79.

Finally, defendant contends that the court erred in imposing a minimum term in excess of the 1-year minimum provided by statute (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3)). She also claims on the authority of *People v. Matychowiak* (1974), 18 Ill.App.3d 739, that the court erred in not informing defendant of his reasons for exceeding the minimum.

■■ *People v. Matychowiak*, however, is not helpful here. In *Matychowiak* the appellate court noted that the minimum sentence was based entirely on the plea agreement and that no sentencing hearing was conducted to provide a proper record. Here the record is complete and from it we conclude that a minimum sentence in excess of the 1-year minimum is justified by the nature and circumstances of the offense. See also *People v. Taylor* (1974), 25 Ill.App.3d 396, 408-09.

We therefore affirm the judgment of the trial court.

Affirmed.

GUILD and HALLETT, JJ., concur.

---

[1] This view is supported by the case of *People v. Rednour* (1974), 24 Ill.App.3d 1072, 1077. But see contra cases, *e.g.*, *People v. DeBates* (1974), 18 Ill.App.3d 663, 664; *People v. Bridges* (1974), 20 Ill.App.3d 900, 901 (abstract opinion), which have held that the *Moran* decision applies even under the 1973 Code of Corrections.